M. J. GRAY, PLAINTIFF, v. DENHALTER, MAT-
THEWS ET AL., DEFENDANTS.

*In re* APPEAL OF ALFRED CREBBIN, APPELLANT, from
Decision, Order and Decree made on application of Re-
spondent John W. Judd.

1. *Mortgage Foreclosure—Attorney's Fee a Part of \the Judgment—
Lien on the Property Sold.*

Where an attorney's fee has been allowed under chapter 29,
p. 25, Sess. Laws 1894, by the court in a foreclosure suit, and
the amount of the fee has been adjudicated and made a part
of the judgment, the attorney has an interest in the judgment
and lien thereon to the extent of the amount allowed, and the
lien cannot be discharged by payment to any one except the
attorney, who, to the amount thereof, is deemed the equitable
assignee of the judgment; and the fact that the property was
sold to the owner of the debt can make no difference.

2. *Same—Resale—Practice.*

It is competent for a court of equity, upon proper application,
to set aside a sale of property ordered in a foreclosure suit, and
order a resale of the same to satisfy the lien of an attorney,
which is a part of the judgment, and which should have been
paid out of the proceeds of the sale; and the sale will be con-
sidered set aside when the purchaser is ordered to pay the at-
torney's fee awarded in the judgment, and the order further
provides that, in the event of his failure to pay such fee, the
property be resold to pay the several amounts provided for in
the decree, including the attorney's fee and costs, although the
better practice would be to have the sale set aside before order-
ing a resale.

3. *Same—Court of Chancery—Power of.*

A court of chancery has control of a sale made in a fore-
closure suit until the final disposition of the cause, and has an

inherent power to enforce its decrees and judgments, and it can make any order necessary for such purpose.

(No. 895. Decided June 13, 1898.)

Appeal from district court, Salt Lake county; Ogden Hiles, *Judge.*

Suit by M. J. Gray against Henry Denhalter and others. From a decree directing Alfred Crebbin to pay John W. Judd $1,000, and, upon failure to do so, that certain premises be resold, Crebbin appeals. *Affirmed.*

*William Kahn* and *Day & Street* for appellant.

*George W. Moyer* and *H. P. Henderson,* for respondent Judd.

BARTCH, J.:

This case results from a failure of the appellant, who purchased certain property at a foreclosure sale under a deed of trust, to comply, as is claimed, with the terms of the decree of foreclosure respecting a certain sum directed to be paid as an attorney's fee. It appears from the record that the plaintiff, M. J. Gray, had previously purchased the same property at a sale made under a second trust deed, and afterwards brought an action in ejectment for the property against the Denhalters, and, still later on, a suit in equity for the appointment of a receiver to take charge of the property. In the equity suit, the Jarvis-Conklin Mortgage Trust Company was made a defendant. J. H. Bacon was the trustee in both trust deeds, and the agent of the defendant trust company. Respondent J. W. Judd was its attorney, and filed a cross complaint for it in the equity suit, joining in the prayer for a

receiver and to obtain a decree of foreclosure of its trust deed, and obtained the decree to sell the property. In the meantime the defendant trust company itself went into the hands of receivers, and the receivers assigned the deed of trust and the debt therein secured to the appellant, Crebbin.

There is some conflict in the evidence as to whether the respondent was employed as the attorney of Bacon or of the trust company, but the court found that he represented the trust company, and this, we think, is supported by the proof. Bacon was appointed in the decree of foreclosure special commissioner to sell the property, and out of the proceeds was to retain his fees; then pay to J. W. Judd, attorney for cross complainant, $1,000 as attorney's fees; and, after having paid the costs, turn the balance over to the cross complainant or its attorney, in payment of the sum of $23,793, found due on the trust deed, and interest. At the sale the property was bid off by the appellant, Crebbin, the then owner of the debt and judgment, for $25,300. The commissioner executed a certificate of sale, but payment of attorney's fee was refused; nor does it appear that any part of the purchase price was paid to the commissioner. Thereupon the respondent Judd moved the court for a resale of the property. The court granted the motion, and ordered that appellant, Crebbin, pay to J. W. Judd, $1,000, within 30 days from a certain date, and, upon failure thereof, that "the premises be sold to pay the several amounts provided for in the decree, including the attorney's fee" and costs. This action of the court is made the basis of complaint by the appellant on this appeal.

The decisive question appears to be whether the respondent had such an interest in the decree, and in lien upon the property, as would authorize the court upon motion

to make the order in controversy. It is insisted for the appellant that the attorney's fees form a part of the judgment, and go to the mortgagee, or, in this case, to the assignee of the mortgagee, and that the respondent had no standing in court to make and insist on the motion, and had no lien on the judgment. It is true this court in *McClure* v. *Little*, 15 Utah, 379, used the language: "Attorney's fees, when allowed, go to the mortgagee or trustee, and become a part of the judgment." In a certain sense this is true, but not in the sense that the mortgagee may hold such fees as his property. They do form a part of the judgment, and may go to the mortgagee, but, if they do, the mortgagee receives them in trust for the attorney, and has no tangible interest in them. Nor has he any right to retain them as liquidated damages or as a penalty for the default of the defendant. They are allowed to indemnify him against expense which he may incur, through the default in the payment of the obligation, but he has no other interest in them than as for such indemnity. Nor can he share in a division of such fees. These views are in harmony with the statute found in chapter 29, p. 25, Sess. Laws 1894, and with *McClure* v. *Little*, where it was said: "This statute was enacted to prevent a division of the fees provided for in the mortgage between the attorney and the mortgagee, and to allow only such reasonable attorney's fees to be taxed against the defendant as were actually agreed to be paid or were paid for his services."

The statute referred to provides (section 1): "In all cases of foreclosure, when an attorney or counsel fee is claimed by the plaintiff, no other or greater amount shall be allowed or decreed than the sum which shall appear by the evidence to be actually charged by and to be paid to the attorney for the plaintiff; and if it shall appear that

there is an agreement or understanding to divide such fees between the plaintiff and his attorney, or between the attorney and any other person except an attorney associated with him in the cause, only the amount to be retained by the attorney or attorneys shall be decreed as against the defendants. Nothing herein contained shall be deemed to in any wise prevent the court from passing upon the reasonableness of counsel or attorney's fees in such cases." Under this enactment, it is clear that the moment a counsel fee, in a foreclosure suit, is allowed, the attorney for the plaintiff has a property interest in it which cannot be defeated by the purchaser at the sale or the mortgagee. It is equally clear that the plaintiff can have no such interest in such fee, not even by agreement with the attorney; for, in the absence of an agreement between the parties to the suit, the fee must be ascertained by the court from the proof, and, in any event, it must be "paid to the attorney for the plaintiff." When the amount of such fee has thus been adjudicated and made a part of the judgment, the attorney has an interest in the judgment, and doubtless a lien thereon to the extent of the amount allowed, and this lien cannot be discharged by payment to any one except the attorney, who, to the amount thereof, is deemed the equitable assignee of the judgment. With reference to an attorney's lien upon the judgment which he recovers, Mr. Justice Harris, in Rooney v Railroad Co., 18 N. Y. 368, said: "It is a valid and established right to receive, out of the moneys to be collected upon the judgment, the amount due him from his client for his services and expenses in obtaining it. In the absence of any agreement on the subject, I suppose, the sum recovered by the party, as an indemnity for his expenses, would be the measure of compensation allowed to the attorney. This, then, would be the extent of his

lien. But, where there has been an agreement for more or less than that sum, the amount which by agreement he is entitled to receive will determine the extent of his lien. It is still true that the attorney is to be regarded as the equitable assignee of the judgment to the extent of his claim for services in the action." *Railroad Co.* v. *Wilson*, 138 U. S. 501; *Marshall* v. *Meech*, 51 N. Y. 140; *Curtis* v. *Richards*, (Idaho) 40 Pac. 57; *Cowdrey* v. *Railroad Co.*, 93 U. S. 352.

The California cases, cited by counsel for the appellant, to the effect that an attorney has no lien for his fees, are not in point, under the statute of this state.

In view of the principles above stated, it now becomes important to ascertain what rights the respondent has under the decree in this case. So far as material here, the decree provides that J. H. Bacon, the special commissioner therein, appointed to sell the property, shall "out of the proceeds of said sale retain his fees, disbursements, and commissions on said sale, and pay to the attorney for the cross complainant, John W. Judd, out of said proceeds, the sum of $1,000 by way of attorney's fees in this cause, together with the costs of this suit, taxed at the sum of ————— dollars, and the said Bacon shall also pay to the cross complaint, or its attorney, the further sum of $23,-793, the amount so found due as aforesaid, together with interest thereon at the rate of eight (8) per cent. per annum from the date of this decree, or so much thereof as said proceeds of sale shall pay of the same after first making the payments hereinbefore mentioned." It will be observed that the respondent is here decreed to be paid by the commissioner out of the proceeds of the sale the sum of $1,000, as attorney for the cross complainant. That sum is thus, by an express decree, fixed as the amount of his compensation for his services in recovering the judg-

ment, and is preferred over the cross complainant's claim. The contract, in the form of the trust deed which was assigned to the appellant, provided for a "reasonable attorney's fee" in case of resort to judicial foreclosure, and, such fee having been fixed in the decree of $1,000, we must, in the absence of anything to the contrary appearing in the record, assume that the amount so fixed was determined by the court from the evidence, as is provided by the statute. Such amount having been adjudiciated, and having become a part of the judgment, the attorney has a lien on the judgment to that extent. The sale was ordered to satisfy the judgment, including that fee, as a preferred item in the decree, and it was not in the power of the trust company, or its assignee, who was the purchaser, to deprive the attorney of the fruits of his labor. It is apparent that, if the property had been struck off to some person other than the owner of the debt, such person would have been compelled to pay the whole purchase price to the commissioner, and that the commissioner would then have been compelled to pay the several items constituting the amount of the judgment in the order of preference in the decree. Suppose, in such case, the owner of the debt were refused payment thereof; would counsel seriously undertake to maintain that the creditor could not come into court, and, upon motion, ask for a resale? Yet the claim of such creditor forms but a part of the judgment. How, then, can it be successfully maintained that, if the owner of the mortgage debt himself becomes the purchaser at the foreclosure sale, he can bid off the property to satisfy his portion of the judgment, and refuse to pay a part of the judgment, which is preferred over his in the decree, without, in like manner, having the property exposed to resale? The fact that the owner of the mortgage debt, in the present instance, purchased the

property at the sale, affected neither the order of prefer-
ence nor the lien on the judgment for the item which the
purchaser refused to pay. The refusal to pay that part
of the judgment was a violation of the terms of the decree.
The purchaser, so far as his rights and duties under the
decree of sale were concerned, was a quasi party to the
suit, and could come into court, and upon motion ask that
the conditions of sale respecting the title be enforced, or
that he be absolved from his contract. So, likewise, as
such party, he was liable to have conditions of the decree
and sale enforced against him at any time before the
commissioner had made his report as directed in the de-
cree, and the sale had been confirmed, and final disposition
of the cause made. Until this was done, the court had
undoubted control of the sale made under the decree, and,
upon the purchaser failing to comply with the conditions
of the decree and sale, had the power to set aside the sale,
and order a resale of the premises. This could be done
upon motion of a party who had an interest in the judg-
ment, and lien thereon, and was aggrieved because of the
failure of the purchaser to comply with the terms of the
decree. It is true the court did not, in express terms, set
aside the sale before ordering a resale. It made an order,
in substance, that the appellant, Crebbin, pay, or cause to
be paid, to the respondent Judd $1,000, within 30 days
from a certain date, and, upon failure to so pay such sum,
that the premises be sold to pay the several amounts pro-
vided for in the decree, including the attorney's fee and
costs. We are disposed to hold that the effect of this
order was to set aside the former sale, and direct a resale,
in the event that the money is not paid to the attorney at
the expiration of the time specified, although we think the
more usual and better practice is to have the sale set
aside before ordering a resale. That a court of chancery

has control of a sale made in a foreclosure suit, until the final disposition of the cause, and has the inherent power to enforce its judgments and decrees, we entertain no doubt. It can make any order necessary for such purpose. In *Deaderick* v. *Smith*, 6 Humph. 138, the supreme court of Tennessee, speaking through Mr. Justice Green, said: "Every court must have an inherent power of enforcing its judgments and decrees; and, surely, to no tribunal can this power more properly belong than to the chancery court. It has under its control all the sales made by its order until a final disposition is made of the cause. It can set aside a sale altogether, or upon the biddings, or make any other order that may be necessary for the enforcement of the decree. The purchaser at a sale, made by order of the court, must come into court to obtain a decree vesting in him the title to the property purchased. He is a party to the cause for the purpose of obtaining a decree to make his purchase effectual; and can it be said he is not a party when the conditions to be performed by him are to be enforced? Surely not." *Blackmore* v. *Barker*, 2 Swan 340; *Mosby* v. *Hunt*, 9 Heisk. 675; *In re Herman*, 50 Fed. 517; *Newland* v. *Gaines*, 1 Heisk. 720. Whether the attorney was in the first instance regularly employed or not, can make no difference in this case, because it is a fair deduction from the evidence that he performed the services at least under the implied sanction of the appellant and his assignor. We find no reversible error in the record. The decree appealed from is affirmed, and the cause remanded for its execution.

ZANE, C. J., concurs. MINER, J., concurs in the judgment.