[No. 1812, June 30, 1916.]

## PRICHARD v. FULMER et al.

### SYLLABUS BY THE COURT.

1. Under the common law an attorney had a right to a "general" or "retaining" lien, which attached to all papers, documents, and money that came into his hands professionally as an attorney, under which he was entitled to retain possession of such papers, documents, and money until the money due him for professional services was paid.

P. 139

2. The courts also recognize what is generally styled an attorney's "charging lien," which was the right of an attorney or solicitor to recover his fees and money expended on behalf of his client from a fund recovered by his efforts, and also the right to have the court interfere to prevent payment by the judgment debtor to the creditor, in fraud of his right to the same, and also to prevent or set aside assignments and settlements made in fraud of his rights.

P. 139

3. The court will not permit an attorney to assert his lien in an independent suit, as by its control of its process in the original suit it can and will afford him an ample remedy.

P. 144

4. An attorney's lien, upon a judgment recovered in a foreclosure suit, is waived where he permits his client to purchase the property, ordered sold by the court, in satis-

Prichard v. Fulmer, 22 N. M. 134.

faction of the judgment, and the court without objection on the attorney's part confirms the sale and approves the deeds for the same to his client, and the attorney's lien upon the judgment does not follow the land when the title is perfected in his client.

P. 144

Appeal from District Court, Lincoln County; E. L. Medler, Judge.

. Action by George W. Prichard against J. H. Fulmer, Jr., and another. From a judgment for defendant, plaintiff appeals. Affirmed.

G. B. BARBER of Carrizozo and RENEHAN & WRIGHT of Santa Fé, of counsel, for appellant.

In absence of statute, attorney has equitable lien.
Mosley v. Norman, 74 Ala. 424; Andrews v. Morse, 12 Conn. 444; Carter v. Davis, 8 Fla. 183; Jones v. Groover, 46 Ga. 568; Hunt v. McClanahan, 48 Tenn. 503; Filmore v. Wells, 15 Pac. .343.

Contract for payment of attorney's fee is enforcible at common law. 27 Cyc. of Pro. 1781, 1785.

As to attorneys' liens generally, see:
Porter et al. v. Hansum, 36 Ark. 593; Wooten v. Denmark, 85 Ga. 579; Stockton Savings Bank, 60 Cal. 481; Grev v. Denhalter, 53 Pac. 976; Winchester v. Heiskell, 84 Tenn. 578; Whittle v. Tarver, 16 Lea, 556.

Remedy sought to enforce lien was proper.
Filmore v. Wells, 15 Pac. 343; Lane v. Hallum, 30 Ark. 387; Porter et al. v. Hansum, 36 Ark. 506; 4 Enc. L. & Pro. 1021.

LORIN C. COLLINS of Santa Fé, for appellee.

The universal rule is that where an attorney's lien exists at common law there are certain duties and obligations imposed upon the attorney asserting the lien, such as notice, pendency of suit, diligence and control of the res.

Walsh v. Hole, 1 Doug. 238; Weeks on Attorneys at Law, sec. 379; Thornton, Attys. at Law, secs. 600, 606; Frissell v. Haile, 18 Mo. 18; Celluloid v. Chandler, 27 Fed. 9; Manning v. Leighton, 24 L. R. A. 684; Marr v. Smith, 6 Eng. C. L. R. 562; Graves v. Eades, 1 Eng. C. L. R. 224; Huff v. Edwards, Exc. R. 171; Hawkins v. Loyless, 339 Ga. 5; Green v. Exp. Co., 39 Ga. 20; Pinder v. Morris, 3 Caines, 165; People v. Hardenburg, 8 T. R. 335; McDowell v. R. R., 4 Bosw. 670; Chapman v. Howe, 1 Taunt. 341; Groves v. Eades, 5 Taunt. 429; Barker v. St. Quentine, 12 Mees. & W. 440.

## OPINION OF THE COURT.

ROBERTS, C. J.—Appellant was employed by Jacob H. Fulmer, Jr., as attorney, to foreclose three certain mortgages on described real estate, executed to him by the Eagle Mining & Improvement Company to secure an indebtedness of $112,000, represented by promissory notes. Suit was filed pursuant to such employment on January 1st, 1909, and on May 9, 1909, final decree was entered. This decree, after finding that the notes representing the indebtedness, secured by the mortgage, were past due and unpaid, and giving judgment for the amount due, further provided:

"And it is further ordered and adjudged that the plaintiff have and recover of and from the said Eagle Mining & Improvement Company the further sum of 7 per centum on said amount as his reasonable attorney's fees herein incurred in and about the bringing and prosecuting of this suit and the foreclosure of said mortgage. as provided for in the said notes, and that he have execution therefor in the sum of $7,906.10."

After making provision for the sale of the property and the payment first of the taxable costs, the decree provided:

" * * * And out of the remainder pay the plaintiff the sum of $120,900.50, the amount of his total judgment herein, including attorney's fees, together with the legal interest thereon, from the date of this decree to the date of sale."

The decree further made provisions for a deficiency judgment, in case the property failed to sell for an amount

sufficient to satisfy the judgment.  A commissioner was appointed by the court to sell the property, and he was by the court ordered to sell the property for cash, unless the mortgagee, Fulmer, should purchase it, in which event Fulmer was only required to pay cash for any amount which he might bid on the property in excess of the amount of the judgment and costs.  Fulmer purchased the property at the sale for $35,000, and the commissioner executed to him a deed, which was approved by the court.  No money was paid the commissioner, except the taxable costs and fees of such commissioner.  Appellant was not paid his attorney's fee, and thereafter Fulmer conveyed the property so purchased by him to the Parsons Mining Company, of which he was president. The balance of the original judgment, amounting to something over $85,000, has never been satisfied, and is in the form of a deficiency judgment against the original makers of the notes.

On the 14th day of October, 1913, appellant filed his complaint in the trial court, wherein he set out the above facts, and alleged that Fulmer had agreed to pay him, as compensation for services rendered by him in foreclosing the said mortgage, the amount called for and stipulated therein to be paid, which was the amount allowed by the court and carried into the judgment; that he had an attorney's lien upon the judgment rendered in the original action for the sum of $7,909.10; that Fulmer had failed to pay to him any portion of the fee earned by him as aforesaid, and that there was due and owing to him the said sum, for which he was entitled to and did have a lien upon the property purchased by Fulmer at such sale and by him transferred to the Parsons Mining Company; that said Parsons Mining Company had full knowledge of all the facts, and knew that he had not been paid any portion of the fees earned by him in such foreclosure proceeding.  Appellant prayed for judgment against Fulmer for the amount stated, and asked, in the event of nonpayment, that the sale of the real estate to Fulmer and to the Parsons Mining Company be set aside,

and for a resale for the purpose of paying and discharging his lien.

The Parsons Mining Company demurred to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action, and specifically upon several grounds, only one of which need be stated, for, if well taken, it disposes of this appeal.   This was as follows:

"(e) That the said plaintiff, by his failure to assert his alleged lien for attorney's fees at and before the sale was confirmed, and deed executed and delivered to the said defendant Fulmer, waived his said alleged lien on said property, and by operation of law must be held to have elected to look solely to the said Fulmer for his compensation and waive his alleged lien on the property so sold and conveyed."

The trial court sustained the demurrer, and, appellant refusing to plead further, judgment was entered dismissing the complaint as to the Parsons Mining Company, from which judgment this appeal was taken.

The question presented is whether the trial court erred in sustaining the demurrer to the complaint, and this can be disposed of by a consideration of the ground of demurrer above stated, as we consider it decisive against appellant's right to the relief which he seeks.   Before entering upon a discussion of the question it is advisable to briefly refer to the law upon the subject of attorney's liens, in order to obtain a clear understanding of the point presented.   In this jurisdiction we have no statute which gives or undertakes to give to attorneys a lien upon a judgment procured by their efforts for the value of their services or the agreed compensation.   Most of the states do have such a statute, which in many states is very broad and extends the lien to the proceeds of the judgment "in whosesoever hands they may come."   The usual code provision reads as follows:

"From the commencement of an action, or the service of an answer containing a counter-claim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor and the proceeds thereof in whosesoever hands they may come, and cannot

be affected by any settlement between the parties before or after judgment."

[1] There being no statute here, in order to determine the rights of an attorney in this regard in this state, we are necessarily required to resort to the common law and to the practice prevailing in courts of equity in such cases. The English courts, at an early date, not easy of ascertainment from the reported cases, recognized the right of an attorney to retain papers or other property that might come into his possession, or money that he in the course of his professional employment had collected, until all his costs and charges against his client were paid. This right on the part of the attorney was known as a "general" or "retaining" lien, and was a common-law lien founded upon possession. This lien was enforced by the English courts as early as 1734. Jones on Liens (3d ed.) § 113. In the case of Weed Sewing Machine v. Boutelle, 56 Vt. 571, 48 Am. Rep. 821, the court said:

"The former [referring to the retaining lien] attaches to all papers, documents, and money that come into his hands professionally as an attorney without any special contract in regard to the same. Having the possession, he has the right to retain them against his client, assignments, or attachments, until the general balance due him for legal services is paid. The client cannot discharge him and withdraw such papers or money from his hands without first paying the general balance due him for legal services, whether growing out of the special matters then in his hands or other legal matters. This right is said to have its origin partly in custom and partly to prevent circuity of action. Whart. Ag. §§ 623 to 625, and cases cited in the notes; Hutchinson v. Howard, 15 Vt. 544; Hurlbert v. Brigham & Waterman, 56 Vt. 368; Sterling ex parte, 16 Ves. 258; Dennett v. Cutts, 11 N. H. 163; Wright v. Cobleigh, 21 N. H. 339. Having possession of a thing to which the lien attaches, no notice is required to protect it against assignment by the client or attachment by trustee process by his creditors."

[2] The courts also recognized what is generally styled an attorney's "charging lien," although it has been frequently stated by the courts and law writers that, in a strict sense, there is no such thing as a lien upon a thing not in possession. In Barker v. St. Quintin, 12 M. & W. 441, Baron Parke said:

"The lien which an attorney is said to have upon a judgment—which Mr. Jones (Jones on Liens, § 155) says perhaps is an incorrect expression—is merely a claim to the equitable interference of the court to have the judgment held as a security for his debt."

Without quibbling over the question as to whether this right on the part of the attorney is, strictly speaking, a "right to a lien" or the right to the equitable interference of a court of equity, as stated, we shall in this discussion refer to it as a "charging lien," because as a practical matter, it is of no consequence. A very interesting discussion of the question will be found in Jones on Liens (3d ed.) § 155 et seq. The charging lien, as recognized by the courts, is the right of an attorney or solicitor to recover his fees and money expended on behalf of his client from a fund recovered by his efforts, and also the right to have the court interfere to prevent payment by the judgment debtor to the creditor in fraud of his right to the same, and also to prevent or set aside assignments or settlements made in fraud of his right. It does not usually attach until the recovery of judgment, and then does not prevent an honest settlement, nor a payment to his client until the attorney has notified the debtor of his intention to claim a lien. Weed Sewing Machine Co. v. Boutelle, supra. In speaking of this lien, Mr. Jones says:

"The time and manner of the origin of this lien are not shown by any reported case. Probably it has been the practice of judges to aid attorneys in securing their costs out of judgments obtained for their clients before the right to the lien had been formally adjudicated. It was doubtless recognized upon the ground of justice that the attorney had contributed by his labor and skill to the recovery of the judgment, and the court, wishing to protect its own officers, exercised its power to that end, or, as Lord Kenyon puts it: 'The party should not run away with the fruits of the cause without satisfying the legal demands of his attorney, by whose industry, and in many instances at whose expense, those fruits are obtained.'" Jones on Liens, vol. 1 § 156.

In some of the American states, without an express statute upon the subject, the courts have refused to recog-

nize the right of an attorney to a charging lien, upon the theory that, as the right in England was limited to the taxable costs, and the compensation of an attorney was taxed as costs in the case, while here the attorneys are not entitled to tax their fees as costs, but recovered them only from their client, upon quantum meruit or by special agreement, the rule can have no application. For list of states so holding, see note to section 159, Jones on Liens. Other courts hold that the attorney is entitled to the lien, and give as a reason that the taxed costs of the attorney in England had no merit or justice superior to the claim of counsel in this country for a reasonable compensation; and therefore the lien should be here extended so as to secure such compensation. Jones on Liens, § 167, says:

"It is argued that the rule restricting the lien to the amount of the taxed costs arose from the fact that in England these costs are the only charges for which an action might be maintained, the services of the barristers being in theory gratuitous, and their charges only an honorary obligation of quidam honarium; and consequently, where the payment of the fees and charges of an attorney may be legally enforced, as is the case in this country, the reason for the restriction fails, and the lien should cover fees other than the taxed costs, and should include the charges of counsel."

In the case of Wilkins v. Carmichael, 1 Dougl. 101, which was a suit before Lord Mansfield, in which it was sought to establish a lien in favor of the captain against the ship for his wages, the counsel referred to the case of attorneys who cannot be compelled to deliver up their client's papers until their fees are paid. Lord Mansfield, interrupting the argument of counsel, observed:

That "the practice in that respect was not very ancient, but that it was established on general principles of justice. and that courts both of law and equity have now carried it so far that an attorney or solicitor may obtain an order to stop his client from receiving money recovered in a suit in which he has been employed for him till the bill is paid." Jones on Liens, § 113.

In the case of Welsh v. Hole, 1 Doug. 238, Lord Mansfield said:

"An attorney has a lien on the money recovered by his client for his bill of costs; if the money come to his hands, he may retain to the amount of his bill. He may stop it in transitu if he can lay hold of it. If he apply to the courts, they will prevent its being paid over till his demand is satisfied. I am inclined to go still further, and to hold that if an attorney give notice to the defendant not to pay till his bill should be discharged, a payment by the defendant after such notice would be in his own wrong, and like paying a debt which has been assigned after notice."

If the courts of England, "on general principles of justice," upon application of the attorney, would prevent money being paid over to a client until such attorney's bill of costs, which in truth and in fact was the indirect payment to the attorney of compensation for services rendered, had been paid, and, upon notice to the defendant not to pay the judgment until such bill of costs had been discharged, would compel satisfaction of the attorney's claim, we fail to see why the same principles would not here likewise apply to the fees and expenses of an attorney. In our opinion they should, and this conclusion is supported by many of the adjudicated cases. A very valuable note upon the subject will be found in 31 Am. Dec. 755, appended to the case of Andrews v. Morse, reported in the same volume at page 752. See, also, Ward v. Syme, 9 How. Prac. (N. Y.) 16, for a very learned discussion of the subject.

Having considered the nature and right of an attorney to a lien upon the judgment which he recovers for his client, we will now turn to a consideration of the particular question presented by this appeal. Here the attorney gave no notice to the defendant Eagle Mining & Improvement Company that he intended to assert a lien against the judgment, and as there was no voluntary payment by the judgment debtor of the money called for therein, any question of notice to such judgment debtor is beside the question. The sole question presented is: Does the attorney's lien attach to money or property which the client receives in satisfaction of the judgment? Under the Code provision, quoted herein and in force in many of the states, the question necessarily would be answered in the affirmative. In the case of Loofbourow v.

Hicks, 24 Utah, 49, 66 Pac. 602, 55 L. R. A. 874, the
court held that a lien for attorney's fees allowed by a
judgment foreclosing a real estate mortgage attaches to
the land, and may be enforced against it after it has been
bid in by the mortgagee or his assigns with notice, for
an amount less than that due on the mortgage, which has
been credited on the judgment.

Appellant cites and relies upon the following cases as
sustaining the sufficiency of his complaint herein and
his right to the relief which he seeks:    Porter, Taylor
& Co. v. Hanson, 36 Ark. 593; Wooten v. Denmark et al.,
Executors, 85 Ga. 579, 11 S. E. 861; Stockton S. & L.
Society v. Donnelly, 60 Cal. 481; Gray v. Denhalter, 17
Utah, 312, 53 Pac. 976.   A review of these cases, however,
will show that they do not sustain his right to enforce his
lien against real estate purchased by his client in satis-
faction of the judgment.   The Arkansas case was based
upon a statute, which gave the lien therein asserted.   It
is true the court said:

"The object of the suit had not been to recover land, or
establish title, but to recover money by foreclosure; and as
the complainant had taken land by foreclosure in place or
money, it would have been just and entirely in accordance
with Hangar and Wife v. Fowler, 20 Ark. 667, to nave
transferred the lien to the land."

The court further said, however:

"It is useless, however, at this day, to discuss the extent
of an attorney's lien, as the whole matter has been settled
by the Code of Civil Practice since Hanger's Case, and no
language could be plainer than that of the Code to give
the lien here claimed.' '

The Hanger Case, referred to in the opinion, which
was evidently decided before the Code provision was en-
acted simply held, however, that an attorney could not
assert a lien upon land recovered in a chancery suit for
his fee; that to permit him to do so would be introduc-
tory of a new principle, and the extension of the doctrine
of solicitor's lien beyond adjudged cases.   As the later
case was decided under a statute expressly giving the right
claimed, the casual remark made by the court as to the

rule before the statute was enacted certainly would be entitled to but little weight, and especially where no precedent is found supporting the same.

The Georgia case of Wooten v. Denmark, supra, was likewise controlled by a statute, which provided:

"Upon all suits for the recovery of real or personal property, and upon all judgments or decrees for the recovery of the same, attorneys at law shall have a lien on the property recovered, for their fees, superior," etc.

The court construed this statute as applying to land purchased by the client upon foreclosure proceedings in satisfaction of the judgment.

The case of Stockton S. & L. Society v. Donnelly involved simply the right of the attorney to recover his fee from a defendant in a foreclosure suit, where defendant had paid plaintiff the principal and interest due on the mortgage after the institution of the suit, at which time he had been informed by the plaintiff that he would be required to pay the attorney's fee. The statute in California provided that:

"In all cases of foreclosure of mortgage the attorney's fee shall be fixed by the court in which the proceedings of foreclosure are had, any stipulation in said mortgage to the contrary notwithstanding."

This case affords no support to appellant's contention. The Utah case (Gray v. Denhalter) is likewise controlled by statute. In that case the court, after quoting the statute in question, said:

"So likewise, as such party, he was liable to have the conditions of the decree and sale enforced against him at any time before the commissioner had made his repo't as directed in the decree, and the sale had been confirmed, and final disposition of the cause made."

[3, 4] In the case before us, however, the attorney seeks to go much further, and to have his fee declared a lien upon the real estate purchased by his client some four years after the confirmation of the sale and approval of the deed. That he cannot do this becomes apparent when we consider the origin of the lien and its

Prichard v. Fulmer, 22 N. M. 134.

nature and purpose. As heretofore shown, by quotations from the text-writers and cases, the lien originated in the desire on the part of the courts to protect attorneys against dishonest clients, who, utilizing the services of the attorney to establish and enable them to enforce their claims against their debtors, sought to evade payment for the services which enabled them to recover their demand. The court, having control of its own process, would not permit the client to have the benefit thereof without paying the attorney, because in equity and good conscience he should compensate the attorney, as by his exertions and skill he had made it possible for the client to invoke the aid of the court and secure the process of such court to enforce his demand. The court, having control of its own process, saw to it that the client did not utilize it so as to defeat the attorney of his fee. Upon proper application by the attorney it would direct its officers to pay to the attorney the money to which he was entitled, or would withhold its process until he was compensated. In cases similar to the one under consideration, if the property had been sold to a third party, of course, the money would have been paid into the hands of the commissioner, and it could have ordered the amount of the attorney's fee paid direct to such attorney. Where the property was bid in by the creditor in satisfaction of the judgment, as in this instance, upon the attention of the court being called to the fact that the attorney had not been paid, the court would have withheld confirmation of the sale and approval of the deeds until he was paid, and, in the event of the failure to pay it, might, by proper order, have directed a resale of the property. Thus we see that the courts, by the control which they have over their own process, have ample power to protect the diligent attorney, and this they do, as stated, because the demands of equity and justice require it.

No case has been called to our attention, in the absence of statute, where the courts have permitted the attorney to assert his lien in an independent suit, such as is attempted in this case; and the reason is plain. The courts only give him a lien upon the judgment, or, per-

haps more properly speaking, give him the right to invoke the aid of the court, by the control which it exercises over its process and officers in the cause in which the judgment was rendered, in securing for him his just compensation.  This willingness on the part of the court, in the cause in which the judgment was rendered, to afford him protection, gives to the diligent attorney an ample remedy by which he can enforce his just demands, thus affording to the diligent ample protection.  One who has been dilatory, and has permitted the client to collect the judgment, without objection or protest, or seeking aid from the court, cannot invoke the aid of a court of equity; nor can he ask the court, after he has permitted it to confirm a sale of real estate to his client in satisfaction of the judgment and approved a deed made by its commissioner, to set aside its acts in the premises.  It is a well-known equity maxim that "equity aids the vigilant, not those who slumber on their rights."  In Jones on Liens, § 204a, the author, in speaking of attorney's liens, says:

"The lien does not exist after the client has accepted satisfaction of his judgment, and it does not attach to property received in satisfaction of it."

And at section 231 the same author says:

"The attorney waives his lien by his acquiescence in a satisfaction of the judgment by the payment of money or the transfer of property to his client, and he cannot afterwards enforce his lien upon such money or property, but must look to his client alone for his compensation.  An attorney's lien upon a judgment is waived by his procuring the transfer to his client of land attached in the suit in satisfaction of the judgment.  His lien upon the judgment does not follow the land when the title is perfected in the client."

In the case of Stewart v. Flowers, 44 Miss. 513, 7 Am. Dec. 707, the plaintiff, an attorney, had rendered services to the defendant, who was plaintiff in a chancery suit, wherein he was successful and recovered the land sought.  Afterwards Flowers sold the land to a third party, and Stewart sought the aid of a court of equity

to compel Cotton, who had purchased the land from Stewart, and had not paid the purchase price, Stewart being joined in the suit as a defendant, to pay out of the unpaid purchase price the fees which he had earned. The Supreme Court, after a very exhaustive review of the authorities, both American and English, says:

"In consideration, therefore, of the character of our institutions, and of the somewhat modified relation in this country of attorney and client, we do not think it advisable to extend the doctrine of implied liens, especially as it is not necessary to the profession; attorneys having it in their power to protect themselves by the exercise of ordinary prudence."

The Mississippi court recognized the right of an attorney to a lien upon the judgment and to the interposition of the equitable powers of the court in aid of the attorney, but would not extend the lien to the real estate recovered.

The case of Goodrich v. McDonald, 112 N. Y. 157, 19 N. E. 649, is very like the present case. In that case Mrs. Graves, a daughter of the defendant, Mrs. McDonald, employed Milo Goodrich, as attorney, to prosecute an action for a money demand against William T. Porter. She recovered a judgment for something over $11,-000. When the judgment debtor was ready to pay the judgment, he notified both the plaintiff and her attorney. The attorney consented that the money should be paid direct to his client. Mrs. Graves received the money and invested $6,000 of the proceeds in a bond and mortgage, which she later assigned to her mother, under a prior agreement that her mother was to receive a certain portion of the proceeds of the judgment. Mrs. Graves failed to pay her attorney, and he afterwards instituted suit in equity against the daughter and mother to subject the bond and mortgage, which the mother still retained, to the payment of his fee. The court, after an extended discussion of attorney's liens, said:

"The lien, as thus established, is not strictly like any other lien known to the law, because it may exist, although the attorney has not, and cannot in any proper sense have, pos-

session of the judgment recovered. It is a peculiar lien, to be enforced by peculiar methods. It was a device invented by the courts for the protection of attorneys against the knavery of their clients, by disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained. The lien was never enforced like other liens. If the fund recovered was in possession or under the control of the court, it would not allow the client to obtain it until he had paid his attorney, and in administering the fund it would see that the attorney was protected. If the thing recovered was in a judgment, and notice of the attorney's claim had been given, the court would not allow the judgment to be paid to the prejudice of the attorney. If paid after such notice, in disregard of his rights, the court would, upon motion, set aside a discharge of the judgment and allow the attorney to enforce the judgment by its process, so far as was needful for his protection. But after a very careful search we have been unable to find any case where an attorney has been permitted to enforce his lien upon a judgment for his services by an equitable action, or when he has been permitted to follow the proceeds of a judgment after payment of them to his client. His lien is upon the judgment, and the court will enforce that through the control it has of the judgment and its own records, and by means of its own process, which may be employed to enforce the judgment. But after the money recovered has been paid to his client he has no lien upon that, and much less a lien upon property purchased with that money and transferred to another. After such payment, unless he has protected his lien by notice to the judgment debtor, his lien is forever gone, and he must look to his client alone for his compensation. As said by Lord Ellenborough, in Wilson v. Kymer, 1 Maule & Sel. 157, and repeated by Senator Verplanck in McFarland v. Wheeler, 26 Wend. [N. Y.] 467: 'In a case of a lien we should be anxious to tread cautiously and on sure grounds before we extend it beyond the limits of decided cases.' There are not only no decided cases which sanction the maintenance of this action, but the drift of all the authorities is against the plaintiff's contention."

To the same effect, see, also, Cowen v. Boone, 48 Iowa, 350, and Keehn v. Keehn, 115 Iowa, 467, 88 N. W. 957.

From the argument advanced, and the authorities cited, we are, with some reluctance, forced to the conclusion that the lien which appellant had upon the judgment recovered for his client was waived where he permitted his client to purchase the property, ordered sold by the court in satisfaction of the judgment, and the court without objection on the attorney's part confirms

Ex parte Carillo, 22 N. M. 149.

the sale and approves the deeds for the same to his client, and the attorney's lien upon the judgment did not follow the land when the title was perfected in his client. Hence the trial court properly sustained the demurrer to his complaint, and its judgment will be affirmed; and it is so ordered.

HANNA and PARKER, J.J., concur.