**In re GRAND JURY PROCEEDINGS.**

**Ray M. VARGAS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 84–1058.**

United States Court of Appeals,
Tenth Circuit.

Feb. 8, 1984.
On Rehearing March 14, 1984.

Leo Romero, Albuquerque, N.M. (William S. Dixon, Rodey, Dickason, Sloan, Akin & Robb, P.A., and R. Raymond Twohig, Jr., Deaton & Twohig, Albuquerque, N.M., with him on the brief), for appellant.

William L. Lutz, U.S. Atty., Albuquerque, N.M. (Richard J. Smith, Albuquerque, N.M., Asst. U.S. Atty., with him on the brief), for appellee.

Dan A. McKinnon, III, of Marron, McKinnon & Ewing, and Michael B. Browde, Albuquerque, N.M., amicus curiae, urging reversal, on behalf of the State Bar of New Mexico.

Before McWILLIAMS, McKAY and SEYMOUR, Circuit Judges.

McKAY, Circuit Judge.

This is an appeal from a final order of the district court in which the appellant, Ray M. Vargas, was cited for contempt of court and ordered confined. His confinement was stayed pending resolution of this appeal. Mr. Vargas, an attorney, was cited for contempt for refusing to produce the files of his client, Sangre de Cristo, Community Mental Health Service, Inc., to the grand jury. The grand jury is investigating fraud involving federal government grants of which Mr. Vargas' client is a recipient. The government has asserted that appellant Vargas is himself a target of the grand jury investigation in connection with allegedly false or excessive billings to his client.

The matter was before us previously when both the attorney and the client challenged the subpoena. *See In re Grand Jury Proceedings (Vargas),* 723 F.2d 1461 (10th Cir.1983) ("*Vargas I*"). There we declined to reach the merits of the subpoena duces tecum's validity because the appeal was premature. We also found that the principles of mandamus and prohibition were not properly invoked. Since that time, the client, Sangre de Cristo, has dropped its resistance to the subpoena and directed Mr. Vargas to turn its files over to the grand jury. After further review and the attorney's refusal to surrender the records, the trial court held the attorney in contempt. This timely appeal followed that order. The appeal is governed by the 30-day provisions of 28 U.S.C. § 1826(b).[1]

---

1. Section 1826(b) provides:

   § 1826. Recalcitrant Witnesses

   (b) No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal taken by him from the order for his confinement if it appears that the appeal is frivolous or taken for delay. Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, *but not later than thirty days from the filing of such appeal.*

Appellant raises two arguments on appeal. First, he argues that, as an attorney, the production of his client files before the grand jury violates his fifth amendment privilege under *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Second, Mr. Vargas alleges that his client files are protected by the attorney work-product privilege.[2] We reject both of appellant's assertions.

The primary focus of appellant's first argument is that compulsory surrender of the client's files would be an incriminating act since his possession of those files would form a significant link in the government's proof of fraudulent billings for work actually or purportedly done by him for the client.

The general principle is established in *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), where the Court recognized that

> [t]he act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena

tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer.[3]

The *Fisher* court qualified this principle by stating that although the act of production had its own communicative aspects, it was doubtful that an admission of the existence and possession of certain papers rose to the level of "testimony" protected by the fifth amendment. *Id.* at 411, 96 S.Ct. at 1581. While we share the concerns raised by Judge Friendly[4] in *In re Dr. Doe,* 711 F.2d 1187 (2nd Cir.1983), and Judge Knapp[5] in *United States v. Karp,* 484 F.Supp. 157 (S.D.N.Y.1980), we believe that an analysis of the Supreme Court cases directed to the production of evidence other than oral testimony indicates that the fifth amendment privilege in this regard is very weak. Not only has the Court refused to extend the privilege to the custodian of corporate documents or those belonging to other collective entities such as unions and partnerships, *see Fisher,* 425 U.S. at 411, 96 S.Ct. at 1581, but it has refused to apply the privilege to a substantial list of other things, of which the

---

28 U.S.C. § 1826(b) (1976) (emphasis supplied). This circuit has held this 30-day rule to be mandatory and it cannot be extended by this court. *In re Berry,* 521 F.2d 179, 181 (10th Cir.), *cert. denied,* 423 U.S. 928, 96 S.Ct. 276, 46 L.Ed.2d 256 (1975). *Contra In re Fula,* 672 F.2d 279 (2nd Cir.1982); *Melickian v. United States,* 547 F.2d 416 (8th Cir.), *cert. denied,* 430 U.S. 986, 97 S.Ct. 1684, 52 L.Ed.2d 381 (1977).

**2.** Mr. Vargas initially claimed production of his client files was protected by the attorney-client privilege. However, since his client, Sangre de Cristo, has now waived the attorney-client privilege, Mr. Vargas does not raise it on this appeal. We, therefore, need not decide the applicability of the crime or fraud exception to the attorney-client privilege in this case. *See Vargas I,* 723 F.2d at 1466–1467 (10th Cir.1983).

**3.** 425 U.S. at 410, 96 S.Ct. at 1581. In *Fisher,* taxpayers under investigation for possible civil or criminal liability under the federal income tax laws transferred documents prepared by their respective accountants to their respective attorneys for assistance with the federal investigation. The Internal Revenue Service sought to subpoena these documents from the attorneys. The attorneys refused to comply. After the government brought enforcement actions, the taxpayers asserted inter alia that produc-

tion of the documents by their attorneys violated the taxpayers' fifth amendment rights. The Court held that the taxpayers' privilege under the fifth amendment was not violated by enforcing the subpoenas against their attorneys, since the taxpayer was not "compelled" to do anything, nor be a "witness" against himself. *Id.* at 396–97, 96 S.Ct. at 1573–74.

**4.** Judge Friendly, concurring in the Second Circuit's decision that the fifth amendment privilege was not available to a doctor's production, pursuant to subpoena, of patient files he was required to keep by law, expressed the concern that the Supreme Court has left unanswerable the question of "how a person can be ordered consistently with the language of the self-incrimination clause to produce ... [documents before a grand jury] under circumstances when he cannot be required to testify about such dealings...." *In re Dr. Doe,* 711 F.2d 1187, 1196 (2nd Cir.1983).

**5.** Judge Knapp, in denying the government's motion to compel the defendant's production of third-party documents in his possession, aptly described the role of the federal courts in discerning the present state of the law surrounding the fifth amendment privilege as that of a tea leaves reader. *See United States v. Karp,* 484 F.Supp. 157, 158 (S.D.N.Y.1980).

act of production would be incriminating in the same sense that the production of these records would be. *See, e.g., South Dakota v. Neville,* —— U.S. ——, 103 S.Ct. 916, 923, 74 L.Ed.2d 748 (1983) (compelling blood-alcohol test not fifth amendment violation); *United States v. Dionisio,* 410 U.S. 1, 5–7, 93 S.Ct. 764, 767–768, 35 L.Ed.2d 67 (1973) (compelling production of voice exemplars not fifth amendment violation); *Gilbert v. California,* 388 U.S. 263, 266–67, 87 S.Ct. 1951, 1953–54, 18 L.Ed.2d 1178 (1967) (compelling production of handwriting exemplars not fifth amendment violation); *Schmerber v. California,* 384 U.S. 757, 765, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966) (compelling blood test not fifth amendment violation); *Holt v. United States,* 218 U.S. 245, 252–53, 31 S.Ct. 2, 6–7, 54 L.Ed. 1021 (1910) (compelling defendant to try on clothes to demonstrate fit not fifth amendment violation).

We must also view the general principle of *Fisher* in light of the Court's opinion in *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). In *Bellis* the documents subpoenaed were the books and records of a small law partnership. The Court held that because the individual partner held the partnership records in a representative capacity for the partnership, he could not assert a fifth amendment privilege with reference to those documents. *Id.* at 100–01, 94 S.Ct. at 2189–90. The thrust of the Court's analysis was that fifth amendment assertions have to focus on the surrender of property which is "the private property of the person claiming the privilege, or at least in his possession in a purely personal capacity." *Id.* at 90, 94 S.Ct. at 2184 (quoting from *United States v. White,* 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944)).

The Court in *Bellis* did indicate that "[a] different case might be presented if petitioner had been ordered to produce files containing work which he had personally performed on behalf of his clients, even if these files might for some purposes be viewed as those of the partnership." 417 U.S. at 98 n. 9, 94 S.Ct. at 2188 n. 9. The

case which the Court explicitly left open in that footnote is now before us.

While the Court in *Bellis* was dealing with documents relating to the internal management of the law firm, its repeated emphasis was on the absence of an ownership interest, and the representative capacity in which the petitioner in that case held the property. *See id.* at 88–90, 94 S.Ct. at 2183–2184. The Court supported its holding by noting that the petitioner was accountable to the partnership as a fiduciary, that the other partners at all times had access to the partnership books, and that the other partners in the firm could enforce their rights by demanding production of the records in a suit for a formal accounting. 417 U.S. at 99, 94 S.Ct. at 2188. The Court similarly emphasized the nature of the documents as being subject to the rights of others and not subject to the exclusive control of the person to whom the subpoena was issued.

■ Whereas the partner in *Bellis* held documents in a representative capacity for the partnership, the attorney in this case holds the client file in a representative capacity for the client. Any ownership rights which inure in the file belong to the client who has presumably paid for the professional services and preparations made by the attorney. In this regard, we find client files to be indistinguishable in principle from the kinds of files which the court found not subject to the fifth amendment privilege in *Bellis.* So far as we can determine, it is a general principle of law that client files belong to the client and indeed the court may order them surrendered to the client or another attorney on the request of the client subject only to the attorney's right to be protected in receiving compensation from the client for work done. *See, e.g.,* Restatement (Second) of Agency § 464(b) (1957) and Restatement of Security § 62(b) (1941). *See also Prichard v. Fulmer,* 22 N.M. 134, 159 P. 39 (1916) (New Mexico's recognition of the common law principle of attorneys' retaining and charging liens). The attorney's interest is only

that of a retaining lien [6] and his interest at best is a pecuniary one, not an interest of ownership, nor privacy.

Indeed, if the analysis of an expectation of privacy plays any part in the Court's analysis in *Bellis*, it could hardly be said that the attorney has an expectation of privacy in the client's files at least against a claim of the client for production or surrender of those files. This is not to say that an attorney has no privacy interest in his work product. Rather, whatever privacy interests an attorney may have, they are limited to those established under the work-product immunity doctrine of *Hickman v. Taylor*, 329 U.S. 495, 510–512, 67 S.Ct. 385, 393–394, 91 L.Ed. 451 (1947), and its progeny.

*Hickman*, however, is expressly limited to those matters relating to the lawyer's mental processees developed explicitly for litigation. 329 U.S. 495 at 510–12, 67 S.Ct. 385 at 393–94, 91 L.Ed. 451. The *Hickman* doctrine was designed to protect a lawyer against his adversary taking advantage of his efforts. Analytically, except for that limitation, a client has some rights in those processes because the client has paid for those labors and efforts. In the case before us, even the *Bellis* Court's indication that a "preexisting relationship of confidentiality", 417 U.S. at 101, 94 S.Ct. at 2189, might present a different case does not apply because the client in the case before us has surrendered any claim of confidentiality and explicitly directed the attorney to surrender the records to the grand jury.

■ We can find no way to distinguish in principle records which are held by a lawyer for his client from records held by a lawyer for his small partnership. Both hold such records in a representative capacity for another individual or collective entity and as such are not in possession of the documents in a purely personal capacity. *See United States v. White*, 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944) ("the papers

and effects which the privilege protects must be the private property of the person claiming the privilege, or at least in his possession in a purely personal capacity"). "[I]ndividuals, when acting as representatives ... cannot be said to be exercising their personal rights," *id,* and thus we need not reach the issue of whether an attorney juridicially organized as a professional corporation, as distinguished from a partnership or sole proprietorship, is entitled to the protections of the fifth amendment on the basis of his or her legal status. As the Third Circuit indicated in *Matter of Grand Jury Empanelled March 19, 1980,* 680 F.2d 327, 330 (3d Cir.1982), *cert. granted sub nom. United States v. Doe,* —— U.S. ——, 103 S.Ct. 1890, 77 L.Ed.2d 281 (1983):

> [I]n *Bellis* ... the Supreme Court made it clear that, in evaluating a fifth amendment claim, the critical factor was not the *size* of the organization the records of which were being subpoenaed, but rather the *nature* of the capacity—either personal or representational—with respect to the privilege which was claimed.

Since the client files are held by Mr. Vargas in a representational capacity, the assertion of the fifth amendment privilege in this case must fail. We limit our holding today to the situation where, as here, the client has directed the attorney to turn the client file over to the grand jury pursuant to the subpoena.

■ Appellant's second assertion that these files are protected under the work-product immunity doctrine must likewise fail. As we have noted, the *Hickman* doctrine protects only that which was prepared in preparation for litigation. The work-product privilege does not apply to documents subpoenaed by a grand jury where such documents were not prepared for the client in anticipation of litigation. *In re Grand Jury Subpoena Duces Tecum*, 697 F.2d 277 (10th Cir.1983).

---

**6.** The retaining lien enables the attorney to retain a client's records or other property that has come into the attorney's possession until the client pays for all of the legal fees owing to the attorney. *See, e.g., In re Southwest Res-*

*taurant Sys., Inc.,* 607 F.2d 1243 (9th Cir.1979), *cert. denied,* 444 U.S. 1081, 100 S.Ct. 1035, 62 L.Ed.2d 765 (1980); *United States v. J.H.W. & Gitlitz Deli & Bar, Inc.,* 499 F.Supp. 1010 (S.D. N.Y.1980).

Prior to our decision in *Vargas I*, and subsequent thereto, appellant asserted before the trial judge his claim of work-product privilege. In both instances the trial court found the privilege inapplicable. The trial court made no finding that the work performed by Mr. Vargas for his client was in preparation of litigation. Although the trial court's findings were not explicit, they must stand inasmuch as appellant has not demonstrated that the trial court's findings were clearly erroneous or that the trial court employed an erroneous legal standard.

In view of the fact that the client has waived the attorney-client privilege, and that the only other privileges asserted by appellant are precluded as we have indicated, the decision of the trial court is affirmed.

## On Rehearing

Petitioner, Ray M. Vargas, requests that this panel rehear the case of *In re Grand Jury Proceedings (Vargas)* ("Vargas II") No. 84–1058 (10th Cir. Feb. 8, 1984). The petition for rehearing and the Government's response have been carefully considered. The petition for rehearing before this panel is granted. No member of the panel nor judge on regular active service on the court has requested that the court be polled on rehearing in banc. *See* Rule 35, Federal Rules of Appellate Procedure. Therefore, the suggestion for rehearing in banc is denied. Additionally, since the trial court has issued a stay of enforcement of the order of confinement pending petitioner's application to the Supreme Court of the United States for writ of certiorari, that part of the petition requesting recall and stay of the trial court's mandate is moot.

We affirm the decision of *Vargas II* with the following addendum.

■ Since the filing of this petition the Supreme Court has decided *United States v. Doe*, ____ U.S. ____, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) (contents of sole proprietor's voluntarily prepared business records not protected by fifth amendment's privilege against compelled self-incrimination).

While *Doe* clearly recognizes that the production of personal papers may be a testimonial act protected by the fifth amendment, that case does not involve papers held by one in a representative capacity. *Id.* at ____ – ____, 104 S.Ct. at 1241–42. As the Supreme Court made clear in *Fisher v. United States*, 425 U.S. 391, 413 & n. 14, 96 S.Ct. 1569, 1582 & n. 14, 48 L.Ed.2d 39 (1976), even though the production of papers held in a representative capacity may be a testimonial act, such production is not protected by the fifth amendment.

Petitioner requests that this court direct its attention to other clients who could be impacted by the subpoena and who have not waived the attorney-client privilege. In *Vargas I, In re Grand Jury Proceedings (Vargas)*, 723 F.2d 1461 (10th Cir.1983), we set forth the standards to be employed by the trial court when determining the application of the crime or fraud exception to the attorney-client or work-product privileges. *Vargas I*, at 1467–68. The trial court in *Vargas II, In re Grand Jury Proceedings (Vargas)*, No. 84–1058 (10th Cir. Feb. 8, 1984), applied those standards and found that a prima facie case had been made as to the application of the crime or fraud exception to both those privileges. Record, vol. 2, at 29–32. The trial court found that as to Mr. Vargas' other clients the attorney-client privilege was not applicable under the furtherance of the crime or fraud exception and that in conformity with the standards set out by this court in *Vargas I* the work-product privilege did not apply. *Id.* at 30.

■ As this court has held, "[t]he determination of whether the government shows a prima facie foundation ... lies in the sound discretion of the trial court." *In re September 1975 Grand Jury Term*, 532 F.2d 734, 737 (10th Cir.1976). A review of the trial court's proceedings clearly reveals that the standards set out in *Vargas I* were followed by the trial court. Thus, there was no abuse of discretion by the trial court.

AFFIRMED.