1999-NMCA-063

980 P.2d 1075

**Renee K. PHILIPBAR, Petitioner,**

v.

**Brian A. PHILIPBAR, Respondent.**

**J.D. Behles & Associates, P.C., Interested Parties–Appellants,**

v.

**Mary E. Chappelle, Court Appointed Guardian,**

**and**

**Singer, Smith & Williams, P.A., Interested Parties– Appellees.**

No. 19,311.

Court of Appeals of New Mexico.

April 21, 1999.

Jennie Deden Behles, Linda Lillie Ellison, J.D. Behles & Associates, P.C., Albuquerque, for Appellants.

Barry D. Williams, Mary E. Chappelle, Singer, Smith & Williams, P.A., Albuquerque, for Appellees.

## OPINION

BOSSON, Judge.

{1} Raising issues of first impression, this appeal challenges the district court's equitable authority in a domestic relations suit to void an attorney's charging lien recorded on the parties' residence and, once that property sells, to allocate the proceeds in a manner that pays court-appointed experts before satisfying attorney charging liens on the proceeds. We hold that the trial court properly exercised its equitable discretion, and accordingly, we affirm and remand for further proceedings.

## BACKGROUND

{2} Renee K. Philipbar (Wife) sought a divorce from Brian A. Philipbar (Husband). Husband hired Behles–Giddens, P.A. n/k/a J.D. Behles & Associates, P.C. (hereinafter sometimes referred to as "Husband's attorney" or "Behles") on January 22, 1996, and executed a written agreement authorizing an attorney's charging lien against any funds or properties recovered or preserved as a result of his attorney's efforts.

{3} Because child custody was contested and the parties had difficulty complying with interim child custody arrangements, the court appointed a Rule 11–706 NMRA 1999 expert (706 Expert) on May 2, 1996, to aid the court in its custody determination. The court also appointed a guardian ad litem (GAL) for the parties' four children, in particular for the benefit of one child who was resisting the interim custody order.

{4} At the time of their appointment, the court ordered that the GAL and the 706 Expert were to be paid from the sale proceeds of the parties' residence which were to be deposited in the court registry when the residence sold. At that time, all interested parties and the court believed the residence would sell for a price sufficient to pay for the experts as well as satisfy other expenses such as attorney fees. As it turned out, they were wrong. Wife, Wife's attorney, Husband, and Husband's attorney all agreed to the court-appointed experts. Husband's attorney did not object to the court's order to pay the GAL and the 706 Expert from the sale proceeds, nor was the court informed that the attorney might assert a charging lien against either the residence or the proceeds.

{5} On February 6, 1997, Behles filed a "Notice of Attorneys' Charging Lien" in the district court clerk's office and sometime later, recorded a similar notice of lien against the residence in the real property records of the county clerk's office. A copy of the notice was mailed to Wife's attorney, to Husband, and to the GAL, but not to the 706 Expert. Wife's attorney filed a similar notice of a charging lien pertaining to legal services provided to Wife.

{6} Shortly after learning of Behles' charging lien against the residence, the GAL formally objected, arguing that there would not be sufficient proceeds to pay the court-appointed experts if the attorneys were paid first. On June 14, 1997, Husband informed Behles that he no longer wished to retain her law firm because the anticipated proceeds from the sale of the house would not be enough to pay Behles along with the GAL and 706 Expert. Husband also indicated in his letter that Behles would have to look to these same sale proceeds for payment of the firm's outstanding bill.

{7} On January 15, 1998, after the residence had been on the market for over a year, Husband requested court approval to accept an offer of purchase. Because of a poor housing market, the offer was approximately $85,000 less than the parties had originally anticipated, and this was not likely to be enough to pay all the fees of the court-appointed experts, much less the parties' attorney fees. Approving the sales price none-

theless, the court required all proceeds to be deposited in the court registry so that the court could order disbursement upon submission of final statements.

{8} As the prospect of a sale grew closer, it became apparent that the recorded liens of the respective law firms clouded the title, and to avoid frustrating the sale, they would have to be either paid or removed as liens from the title. On February 20, 1998, the GAL filed a motion to void the charging liens with respect to the residence which would allow the sale to proceed and the proceeds transferred into the court registry. Behles resisted. On February 24, 1998, with all interested parties present, the court voided the charging liens of both law firms on the residence. The court ordered that the net sale proceeds, then estimated at only $23,500, were to be paid into the court registry without condition and that the attorneys were not to make any further attempt to collect against the real property. The court noted that the court-appointed experts were awaiting payment from the court for their services, and that their fees were estimated at amounts exceeding the anticipated net sale proceeds. Behles appeals the court's order voiding her charging lien.

## DISCUSSION

{9} Behles argues that the district court exceeded its authority by voiding a recorded attorney's charging lien on Husband's interest in the real property. We review the court's decision to remove the charging lien for an abuse of its equitable discretion. *See Northern Pueblos Enters. v. Montgomery*, 98 N.M. 47, 49, 644 P.2d 1036, 1038 (1982) (finding no abuse in the trial court's exercise of its equitable powers over attorney charging liens). In New Mexico, attorney charging liens are governed by common-law, equitable principles. *See Sowder v. Sowder*, 127 N.M. 114, 117, 977 P.2d 1034, 1037 (Ct.App.1999); *Cherpelis v. Cherpelis*, 1998–NMCA–079, ¶ 8, 125 N.M. 248, 959 P.2d 973. The charging lien provides an equitable remedy intended to protect attorneys from unscrupulous clients looking to evade their responsibility for attorney fees. *See Cherpelis*, 1998–NMCA–079, ¶ 8, 125 N.M. 248, 959 P.2d 973. Administration and enforce-

ment of charging liens is subject to the sound discretion of the trial court. *See id.* ¶ 9; *Prichard v. Fulmer*, 22 N.M. 134, 145, 159 P. 39, 42 (1916).

{10} In a dissolution of marriage proceeding the district court maintains jurisdiction over the property of the parties; it divides the property between the parties, and has full discretion to make orders relative to the expenses of the proceeding. *See* NMSA 1978, §§ 40–4–4, –7(A) (1973). The district court may also appoint experts and provide for their reasonable compensation. *See* Rule 11–706(A) & (B) NMRA 1999; NMSA 1978, § 40–4–8(A) (1993); *see also In re Adoption of Stailey*, 117 N.M. 199, 205, 870 P.2d 161, 167 (Ct.App.1994) ("The court is clothed with broad discretion under [Rule 11–706(B)] in apportioning among the parties the costs of an expert witness appointed by the court."). This judicial power inherently includes the right, and the responsibility, to secure the payment of court-appointed experts particularly in the face of limited financial resources. When necessary, the court may have to grant its experts a priority over conflicting claims, including those of attorneys with charging liens. Such authority is essential to the fair and orderly administration of justice in domestic relations matters.

{11} Thus, in an appropriate case, we determine that the court's inherent equitable power must include the capacity to void or release a recorded charging lien on real property. *Cf. Sowder*, 127 N.M. 114, 117–18, 977 P.2d 1034, 1037–38 (holding invalid a charging lien asserted against real property because the attorney failed to timely assert the lien). A cloud on the title may impede liquidation of assets that are necessary to divide the estate equitably between the parties, to pay creditors, and, as in this case, to provide payment for court-appointed experts.

{12} Behles argues that the trial court improperly voided the charging lien in its entirety, as it pertains to proceeds as well as real property. According to Behles, this action exceeded the court's authority and denied her firm standing to assert a charging lien against the proceeds even after the resi-

dence had been sold. However, Behles offers no citation to the record that the court actually precluded her from any further assertion of her claim, and we will not search the record on our own in an attempt to support the argument. *See In re Estate of Heeter,* 113 N.M. 691, 694, 831 P.2d 990, 993 (Ct.App.1992) (stating that appellate court will not search the record to find evidence to support appellant's claims). The court voided the liens that encumbered the sale of the residence and ordered that the claimants not collect against the real property. The court did not preclude Behles from invoking the aid of the court in obtaining fair compensation from the sale proceeds, and upon remand Behles may do just that.

{13} However, as we have indicated, if Behles does proceed to assert her charging lien against the sale proceeds, the decision to grant or deny her firm any equitable relief, including enforcement of the charging lien, falls squarely within the sound discretion of the trial court. By obtaining her client's consent to the possible assertion of a charging lien before the experts were appointed, Behles did not secure priority with respect to the competing claims of experts appointed by the court. We note the irony of Behles attempting to use an equitable remedy, the charging lien, which depends for its enforcement upon the equitable powers of the court, to try to restrict that same equitable discretion of the court in allocating priorities with respect to the use of the parties' assets to pay court-appointed experts. Contrary to the import of Behles's argument, the common-law attorney charging lien is not a mortgage and it is not akin to any other statutorily recognized lien on real property such as a lis pendens. *See* NMSA 1978, §§ 48–7–1 to –21 (1876, as amended through 1991) ("Mortgages"); NMSA 1978, §§ 38–1–14 to –15 (1874, as amended through 1983) (involving notice and cancellation of lis pendens). An attorney may, at the commencement of legal services, indicate an intention to assert a charging lien in the event of nonpayment of fees, but the lien remains subject to the court's equitable discretion for its enforcement. *See Hanna Paint Mfg. Co. v. Rodey, Dickason, Sloan, Akin & Robb,* 298 F.2d 371, 373 (10th Cir.1962); *Sunwest Bank of Roswell, N.A. v. Miller's Performance Warehouse, Inc.,* 112 N.M. 492, 494–95, 816 P.2d 1114, 1116–17 (1991); Jay M. Zitter, Annotation, *Priority Between Attorney's Charging Lien Against Judgment and Opposing Party's Right of Setoff Against Same Judgment,* 27 A.L.R.5th 764, 785 (1995) (reporting *Sunwest* in full); John H. Derrick, Annotation, *Priority Between Attorney's Lien for Fees Against a Judgment and Lien of Creditor Against Same Judgment,* 34 A.L.R.4th 665, 672 (1984). We reject the notion that an attorney, by contracting for a charging lien and recording it in the real property records, thereby creates a binding priority vis-à-vis other claims pending before the court.

{14} The GAL argues that Behles failed to perfect the charging lien because Behles never gave the 706 Expert notice. A charging lien is perfected by giving clear and unequivocal notice to all interested parties of the intention to assert it. *See Thompson v. Montgomery & Andrews, P.A.,* 112 N.M. 463, 466, 816 P.2d 532, 535 (Ct.App.1991); *Prichard,* 22 N.M. at 137, 159 P. at 42. Notice of an attorney's charging lien is untimely if it is asserted after the proceeds of the judgment have been disbursed. *See Thompson,* 112 N.M. at 466–67, 816 P.2d at 535–36. To date, the proceeds from the sale remain in the court registry under the court's jurisdiction. While it would have been better practice to give notice of the charging lien at the time of the appointments, particularly to the court and the appointees, we recognize that the parties and the court anticipated, not unreasonably, that the proceeds from the sale would suffice to pay all claims. Therefore, we do not preclude Behles from notifying the 706 Expert in a timely manner before the proceeds are distributed by the trial court. On remand the court will apportion funds between all interested parties, make orders relating to the expenses of trial, and determine whether and to what extent to enforce the attorney's charging lien. Having determined that the parties and their minor children needed the assistance of the 706 Expert and GAL, the court may grant their claims a priority with

respect to the sale proceeds if the facts and circumstances justify it.

## CONCLUSION

{15} We affirm the trial court's decision to void the notice of Behles' charging lien on the parties' residence. We remand for the trial court to entertain claims against the proceeds, including Behles' claim, and to determine a fair and equitable disbursement of the funds. Each party shall bear its own costs and attorney's fees incurred in this appeal.

{16} **IT IS SO ORDERED.**

APODACA and ARMIJO, JJ., concur.