2008-NMCA-110

191 P.3d 537

In the MATTER OF the ESTATE OF ANTONIO ROYBAL, deceased.

Lee Ulibarri, Jerry Ulibarri, Anthony Ulibarri, and Nieves Schehl, Plaintiffs–Appellants,

v.

Arnold Padilla, Esq., Defendant in Intervention–Appellee,

and

Linda Loe, as personal representative of the Estate of Antonio Roybal and in her individual capacity, and Natividad Roybal, Defendants.

No. 26,874.

Court of Appeals of New Mexico.

March 31, 2008.

Certiorari Denied, No. 31,128, July 18, 2008.

Natelson Law Firm, Jacob D. Caldwell, Taos, NM, for Appellants.

Jane B. Yohalem, Santa Fe, NM, for Appellee.

## OPINION

SUTIN, Chief Judge.

{1} In this appeal, clients challenge the enforcement of their lawyer's charging lien. The charging lien was filed to enforce a contingent fee agreement, pursuant to which the lawyer sought an interest in land recovered for the clients in a lawsuit. We affirm the district court's enforcement of the charging lien.

## BACKGROUND

{2} Arnold Padilla (Padilla) was retained as legal counsel to prosecute a claim for property against the estate of Antonio Roybal (the estate), on behalf of siblings Lee Ulibarri, Jerry Ulibarri, Anthony Ulibarri,

and Nieves Schehl (the Ulibarris). Lee and Padilla agreed to a fee for Padilla's "[p]ursuit of claim for property ... against ... [the estate]," whereby Padilla would receive a $1500 retainer and would be paid a contingency fee equaling "1/6 of recovery[,] plus" an "[h]ourly rate fee of $75[ ] per hour." The fee agreement also stated:

It is understood that attorney has accepted representation of this case at half his hourly rate, plus ½ of his normal contingency, at client's explicit request. It is further understood that the 1/6 contingency applies to the fair market value of all property and assets recovered on behalf of client and his two brothers and sister, whether recovered in short order through negotiations and settlement, or following trial and judgment. It is also contemplated that [Padilla] will represent the [e]state in a possible malpractice and wrongful death action, in the event that [Ulibarri] assumes control of such cause of action.

{3} Padilla represented Lee, Jerry, and Anthony throughout the proceedings against the estate pursuant to the fee agreement. Schehl allowed Padilla to represent her in a deposition and to file documents in the lawsuit on her behalf until Padilla withdrew as her attorney well before the case against the estate was tried. Schehl never signed the fee agreement.

{4} The Ulibarris received a favorable decision from the bench trial in district court that awarded them approximately 101 acres, known as the "Cabins property." During the estate's appeal of the judgment, the parties mediated and reached a settlement by agreeing that the Ulibarris would receive property that was different than the Cabins property awarded at trial; that is, the Ulibarris were to receive approximately 180 acres of land in three separate tracts, plus $40,000, and they were to relinquish back to the estate the Cabins property. Further, the parties "understood and agreed that the $40,000 will be allocated to expenses and costs of trial" and, in addition, that the Ulibarris would each receive an undivided 25% interest in the property they were getting in the settlement "after allocation and payment of the balance of all expenses and attorney fees (16.67% of

the acreage)." The 16.67% contingency was discussed during the mediation with Lee present in the room, with Jerry, Anthony, and Schehl present by speaker phone. A draft of the memorandum of understanding was faxed to Schehl during the mediation. The memorandum shows the signature of Lee and indicates telephonic approval by Jerry, Anthony, and Schehl.

{5} Following the mediation, Padilla filed a motion for approval and enforcement of settlement and for an order "determining the character and method of assets distribution." In that motion, Padilla discussed various circumstances that led him to conclude that the settlement could not be consummated without the involvement of the court. Among other things, Padilla sought approval of a "'Disposition of Settlement Proceeds'" he contended was agreed to, namely, instead of receiving 30.006 of 180 acres, under a particular formula he would receive 20% of 150 acres, and his 20% interest would be "partitioned off from the rest of the property" to be "converted to acreage and deeded to him separately."

{6} Lee apparently responded to Padilla's motion by accusing Padilla of unethical conduct and other wrongdoing, but that response is not in the record on appeal. Because of Lee's response, Padilla filed an attorney's charging lien seeking $28,111.35 against the $40,000 payment from the estate in the settlement and, in addition, a 16.67% interest in each of the three separate tracts of land obtained in the settlement. At the same time, Padilla moved for enforcement of his charging lien. In his memorandum filed in support of his motion, Padilla explained that the contingency of 16.67% had been "stated as a tenancy-in-common percentage ... as a practical short-term facilitation for obtaining deeds" to the properties from the estate because, due to serious deed description and survey issues regarding the properties to be transferred by the estate, the only other "approach would be to further delay the deeds['] exchange pending specific acreage allocations."

{7} Following a remand by this Court in the estate's pending appeal for the district

court to address any dispute in regard to the settlement agreement, the district court proceeded to address enforcement of the settlement agreement. At the hearing, Lee discussed his concerns about the settlement agreement and about what he viewed as Padilla's unauthorized and improper conduct. However, given the opportunity by the district court to have the settlement agreement voided, Lee stated he did not want to void the settlement agreement. The district court orally approved the settlement agreement, directed that $26,791.54 of the $40,000 be paid to Padilla and that the Ulibarris be paid the difference, and reserved for later consideration all issues regarding the contingent fee agreement and Padilla's charging lien. The district court then entered an order stating that the memorandum of understanding between the parties to the action was "approved in full and final settlement of all claims between [the Ulibarris] and [the estate]."

{8} After the settlement agreement hearing, the Ulibarris obtained new legal counsel and filed a response to Padilla's charging lien. The response asserted that Padilla had been paid approximately $40,000 based on hourly fee charges and argued that a contingency fee arrangement was not permissible in a Probate Code proceeding and that all of Padilla's fees should be calculated based only on the original hourly fee agreement. The Ulibarris also contended that Schehl had not retained Padilla and that the brothers should not have to pay fees for any benefit to Schehl. On the day before the scheduled hearing on Padilla's charging lien, the Ulibarris filed another response, essentially contending that Padilla's conduct was fraudulent, in bad faith, and otherwise wrongful, and that Padilla violated Rule 16–108(J) NMRA by acquiring a proprietary interest in the subject matter of the litigation. The Ulibarris stated that allowing Padilla both an hourly rate and a contingency fee would give him a windfall, and they asked the court to quash the charging lien and to set a reasonable attorney fee based on $150 per hour.

{9} In the hearing on Padilla's charging lien, the Ulibarris abandoned their Probate Code argument after the court informed them that the action against the estate was not a probate proceeding. The hearing consisted only of counsel's arguments and discussions with the court. It essentially addressed the Ulibarris' contentions that the amount of money Padilla had received for fees was adequate to cover the hours he worked on the case and that a contingency fee of an interest in the property would be unreasonable. The court inquired into reasonableness and risk, and questioned Padilla extensively about the reasonableness of the contingency fee he sought, given the amount he had already received for his hourly fee, and given the prospect of awarding an interest in the property that had not been surveyed and for which no value per acre was known.

{10} At the close of the hearing, noting that the Ulibarris had signed the fee agreement, the court determined that the hourly fees with the contingent fee arrangement were neither unconscionable nor indicative of overreaching. The court stated: "Padilla did a hell of a job for you. This is a difficult, complex case. It took a lot of time, a lot of effort. These cases are not won very often. This is not to say some other attorney couldn't have done it, but Mr. Padilla is the one that you selected and he is the one that did it." The court also indicated that Schehl obtained a benefit after having done nothing to obtain it.

{11} In an order, the court stated that the fee agreement was "enforceable as written, with the 16.67% contingent fee portion specifically approved." The court also required that Schehl pay her proportionate share of fees to Padilla. The court instructed the estate to prepare deeds reflecting that "Padilla will have an undivided 16.67% interest in each of the properties subject to the settlement in this matter." Further, the court stated that "[a]lternatively, in the event that an appeal is pursued and this fee approval is reversed, this [c]ourt will order that quantum [meruit] issues require that ... Padilla be paid $250 per hour for all of his documented time expended in this case on behalf of these clients."

{12} Following entry of this order, the Ulibarris obtained new counsel and filed a

motion asking the court to reconsider and to clarify the court's order. In that motion, the Ulibarris raised these issues: (1) the order reflected a ruling regarding Schehl's responsibility for fees that was not earlier made by the court, and (2) the court's ruling failed to account for principles of contract construction and equity. As to the latter ·issue, the Ulibarris advanced several arguments, among which were new arguments of lack of mutuality, and that if the fee agreement was not void, the agreement must be interpreted to permit only recovery of a monetary value of the property rather than a proprietary interest. The Ulibarris expressed their concern that family property would be owned in part by an outsider with whom they were antagonistic and who could block family decisions as to the property or stop alienation of the property by family members. The court neither held a hearing nor entered an order on the Ulibarris' motion, leaving the motion to suffer an automatic denial. *See* NMSA 1978, § 39–1–1 (1917). The Ulibarris appeal the district court's order approving attorney fees and the subsequent automatic denial of their motion to reconsider.

{13} On appeal, the Ulibarris assert that the fee agreement was unreasonable, that principles of contract construction and equity required a different result, and that Padilla should be barred from enforcing the fee agreement because he acquired a proprietary interest in the subject matter of the litigation. They also contend that Schehl's portion of the settlement was not within Padilla's reach and that the court's order awarding Padilla fees as to her share was not supported by any ruling or by substantial evidence. In addition, they contend that the settlement agreement did not amend or supercede the original fee agreement in a manner that would allow Padilla any fees greater than allowed in the original agreement. Last, the Ulibarris contend that it was unlawful for Padilla to bill $175 per hour for services after appeal in addition to applying his 1/6 contingency fee.

**DISCUSSION**

■■■ {14} Charging liens in New Mexico "have their origin in common law and are governed by equitable principles." *Sowder v.*

*Sowder,* 1999–NMCA–058, ¶ 9, 127 N.M. 114, 977 P.2d 1034. An attorney's charging lien is the "attorney's right to recover his fees and money expended on behalf of his client from a fund recovered by his efforts." *N. Pueblos Enters. v. Montgomery,* 98 N.M. 47, 49, 644 P.2d 1036, 1038 (1982) (internal quotation marks and citation omitted). Authority to enforce a charging lien arises in equity rather than purely in contract, and the court may inquire into the reasonableness of the fee. *Id.* "[T]he common-law attorney charging lien is not a mortgage and it is not akin to any other statutorily recognized lien on real property such as a lis pendens." *Philipbar v. Philipbar,* 1999–NMCA–063, ¶ 13, 127 N.M. 341, 980 P.2d 1075. "[T]he lien [is] subject to the court's equitable discretion for its enforcement," *id.,* and it is left to the court to "determine whether and to what extent to enforce [it]." *Id.* ¶ 14. We review enforcement of a charging lien for abuse of discretion. *See id.* ¶ 9 ("Administration and enforcement of charging liens is subject to the sound discretion of the trial court."); *Cherpelis v. Cherpelis,* 1998–NMCA–079, ¶ 9, 125 N.M. 248, 959 P.2d 973 ("In New Mexico, the traditional attorney's charging lien is solely an equitable remedy administered by the court in its discretion."); *Robison v. Campbell,* 99 N.M. 579, 585, 661 P.2d 479, 485 (Ct.App.1983). "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims,* 1996–NMSC–078, ¶ 65, 122 N.M. 618, 930 P.2d 153. We now discuss the Ulibarris' appellate points as they characterize and argue them.

**I. First Point: The Court Erred in Granting Padilla's Motion to Enforce Charging Lien**

{15} The Ulibarris assert on appeal that (1) the fee agreement was unreasonable, (2) the court failed to account for principles of contract construction and equity, and (3) Padilla's interest in the property makes the fee agreement unenforceable. We address these contentions in order.

## A. The Ulibarris Claim that the Fee Agreement was Unreasonable

{16} The Ulibarris do not contend that the fee agreement, on its face or in principle, is unfair, overreaching, or unreasonable. They claim that the court "erred in refusing to conduct an analysis of reasonableness under the circumstance[s] of the case, rather than to just review the fee agreement for its reasonableness on its face." They complain that court scrutiny would have shown that the agreement was unreasonable because Padilla had a conflict of interest and a self-interest arising from a persistent pursuit of an interest in the property recovered, because (1) Padilla violated ethical requirements, (2) the fee was excessive, and (3) Padilla had a general disregard for his clients' contractual and equitable rights. The Ulibarris want Padilla's fees to "be limited to a less than reasonable amount for the services rendered in this case as an equitable, *quantum meruit* matter, and at the most, that his fees be limited [to] his admitted reasonable, hourly rate of $150[ ] per hour."

{17} To show lack of reasonableness as well as Padilla's pursuit of property and not a dollar recovery, the Ulibarris point to an exchange between Padilla and the court in the hearing on enforcement of the settlement agreement in which Padilla represented that it would take $500,000 for him to relinquish his interest in the property. The Ulibarris state on appeal that their lawyer estimated, without meaningful objection from Padilla, that Padilla spent a total of 285.8 hours on the case which, at Padilla's regular rate of $150 per hour, totaled $42,870. It is from this calculation that the Ulibarris attack any contingency fee recovery giving Padilla an ownership interest in the properties. In that regard, the Ulibarris argue that Padilla had the burden of proving, but failed to prove, that his services were reasonably worth what he was seeking.

{18} The Ulibarris argue further that the court should have reviewed the fee by testing it "against a *quantum meruit* standard and determin[ing] from all the facts and circumstances the amount of time spent, the novelty of the questions of law, and the risk of non-recovery to the client and attorney." The Ulibarris note "that the risk of non-recovery by [Padilla] was substantially decreased because ... Padilla received compensation on an hourly basis." They also note that the court did its own calculation based on 30 acres (16.67% of 180 acres), and then, using an estimated per-acre value of the property, the court concluded that the total would be "way over and beyond what I believe would have been a reasonable fee in this case." In addition to faulting the court for not conducting any analysis into the reasonableness of the contingent fee claimed against the property, the Ulibarris also fault the court for not requiring Padilla to itemize the basis for his request for $28,111.35 (which turned out to be $26,791.54) of the $40,000 settlement amount.

{19} The Ulibarris also seek to void the fee agreement on the ground that Padilla breached Rule 16–105(C) NMRA. Under Rule 16–105(C), a contingency fee agreement must "be in writing and ... state the method by which the fee is to be determined, including the percentage ... [of] recovery[.]" *Id.* Upon conclusion of the matter, the lawyer is required to show the method of determination of the remittance to the client. *Id.* The Ulibarrris assert that "Padilla never submitted a remittance to [them] describing his interpretation of the value of the property for purposes of determining his contingency fee, and never provided a basis for his representation to the [c]ourt that his interest should be valued at $500,000." The Ulibarris then assert that either Padilla's "failure to abide by ethical requirements or his persistent failure to acknowledge the terms of the Fee Agreement and the parties thereto" should result in nullification of the fee agreement and a substantial limitation on his fee recovery.

{20} In their reply brief only, the Ulibarris also point to what they consider to be misrepresentations by Padilla to the court as to the fee agreement and discussions about separating the properties. The Ulibarris combine this assertion with what the Ulibarris characterize as Padilla's "ruthless pursuit of partition and liquidation of the property," Padilla's overreaching intent "to own one-

sixth of the acreage," Padilla's failure to disclose to the Ulibarris "that he would insist on ownership of the property to partition it unless [a] huge sum was received," Padilla's refusal to accept a fee based on the fair market value of one-sixth of the property, Padilla's "insist[ing] unrelentingly that the only option was ownership and partition," and "Padilla ma[king] himself a party to the Memorandum of Understanding when there was no right nor reason to do so." The Ulibarris state that what "makes the [c]ontract unreasonable" is "Padilla's interpretation of the [c]ontract[ ] that it required him first to own a portion of the property, for it then to be partitioned or otherwise liquidated, and in the meantime to attempt to coerce a $500,000[ ] payoff[.]"

{21} We are unpersuaded by the Ulibarris' arguments. There can be little doubt that, up to the filing of his charging lien, Padilla represented the Ulibarris in lengthy and complicated proceedings in this case. Further, as the district court itself noted, the complex case in which Padilla represented the Ulibarris, which was a claim that a formal, recorded deed to property was subject to an oral or constructive trust, can be difficult to win. The Ulibarris themselves acknowledge that they "never denied that ... Padilla's trial work was exceptional and valuable." The district court was well aware of the entire litigation from the start to the order approving the settlement agreement, which involved substantial discovery and motion practice, a trial on the merits, and appeal proceedings that included the mediation and settlement in this Court. The district court was also mindful that a "lawyer's fee shall be reasonable." Rule 16–105(A).

{22} Further, the court was also aware of Lee's agreement to pay $26,791.54 of the $40,000 to Padilla, as well as his decision not to accept the court's offer to void the settlement agreement. It is obvious that the court was also fully aware of the fees Padilla had been paid and the hours he had worked, as well as the Ulibarris' assertions about Padilla's view of the fee agreement and of the Ulibarris' beliefs and assertions about Padilla's self-interest, conflict of interest, and intent to have an interest in the properties.

The court's personal knowledge of the evidence and proceedings, and the court's awareness of the parties' arguments throughout the proceedings gives substantial credence to the adequacy and reasonableness of the court's scrutiny in all aspects of the fee Padilla sought. *See Sunwest Bank of Roswell, N.A., v. Miller's Performance Warehouse, Inc.*, 112 N.M. 492, 495, 816 P.2d 1114, 1117 (1991) (holding, in the context of weighing equities on the issue of the priority of a charging lien over a set-off of judgments, that the judge's personal knowledge and judicial experience formed a sound basis for his judgment); *Gavin Maloof & Co. v. Sw. Distrib. Co.*, 106 N.M. 413, 415, 744 P.2d 541, 543 (1987) (indicating that a court can determine a reasonable fee based on the court's knowledge of the case and the pleadings filed). Nothing shown to us by the Ulibarris persuades us that the district court failed to perform its duty to look into the reasonableness of the fee, erred in the application of law, or ruled in a manner that was clearly contrary to the logical conclusions demanded by the facts and circumstances. We do not, therefore, see any basis on which to overturn the court's determination that the fee was reasonable.

{23} It is important to note that Lee, who was the only one of the siblings who chose to attend the hearing on the settlement agreement, chose not to void the settlement agreement when he had the chance to do so. Instead, he wanted the settlement agreement enforced, albeit as he viewed it. Furthermore, at the hearing on enforcement of the settlement agreement, the question regarding division of the $40,000 was resolved. Lee "conceded that ... Padilla could extract the bulk [$26,791.54] of the $40,000[ ] cash settlement," and based on that concession, the parties discussed immediately processing the funds at the bank. In addition, we fail to see how discussions between Padilla and the court, regarding Padilla's views as to value and reasonableness, necessarily controlled what the court's final decision should have been or was. We see no basis on which the particular views advanced by Padilla in regard to the fee agreement itself should either bar Padilla from seeking enforcement of the

fee agreement or otherwise require nullification of the fee agreement.

{24} The Ulibarris asserted that Padilla had "conflict-laden and self-interested disregard for the contractual and equitable rights of his clients" and "ruthless pursuit of partition and liquidation of the property," as well as an alleged hidden intent to acquire an interest in the property recovered. However, the Ulibarris were unable to convince the district court of any fraud, misrepresentation, unconscionability, overreaching, or breach of professional conduct on Padilla's part sufficient to bar enforcement of his charging lien. Even if Padilla may have formed some intent to pursue an interest in the property recovered, the court obviously rejected the notion of some nefarious plot to transform a cash fee into a property interest.

{25} The Ulibarris utterly fail to show evidence or argument in the court below regarding, or explaining how Padilla was to recover his contingency fee other than as the court ordered. We see no indication that the Ulibarris at any time offered cash in lieu of property, argued for other means to satisfy the contingency fee, or pushed for an appraisal and liquidation of the property in order to pay the fee. They did not propose that the court order appraisals of the property to determine its fair market value and that, based on those appraisals, they would pay the fee in cash instead of liquidating properties to pay the fees. It was not until late in the day when a new lawyer raised a new argument seeking court clarification of "fair market value" in the fee agreement that the Ulibarris asked the court to attach any contingency fee award only to a dollar lien and not to a property interest. Until then, the Ulibarris' position throughout was that the fee agreement was void and, if not void, Padilla nevertheless had to completely forego his fee as stated in the fee agreement and receive only a quantum meruit recovery or an hourly rate for the hours he worked.

{26} In sum, we see no basis on which to hold that the district court abused its discretion in ordering the payment of attorney fees in accordance with the fee agreement as it did and in rejecting the Ulibarris' position that the fee agreement should be disregarded and that Padilla's fees should be reduced. We hold that the district court did not abuse its discretion or otherwise err in ordering attorney fees based on the 16.67% contingency fee in the fee agreement.

**B. The Ulibarris Claim that the Court's Ruling Failed to Account for Principles of Contract Construction and Equity**

{27} The Ulibarris claim that the parties had different understandings of the one-sixth contingency fee arrangement, resulting in lack of mutuality, requiring a determination that the contract was a nullity. Yet they point to no testimony or other evidence in the record indicating any difference in understanding. We will not search the record to find evidence to support a party's claims. *Philipbar*, 1999–NMCA–063, ¶ 12, 127 N.M. 341, 980 P.2d 1075; *In re Estate of Heeter*, 113 N.M. 691, 694, 831 P.2d 990, 993 (Ct.App. 1992). The Ulibarris' approach consists mainly of their unrelenting focus and repetitive assertions on what they believe Padilla's wrongful intent, including an intent "to rest on this family property, making it inalienable to the [Ulibarris] and tarnishing its familial quality for the purpose of extorting a high pay-off out of them" and "to force partition of the real property." They even assert contract ambiguity, susceptibility to undue influence and duress, lack of clarity in regard to the method of computing and allocating Padilla's interest, and a plan by Padilla to obtain an interest in the property itself before any calculation of the fair market value of the property. And they ask this Court to construe the contract liberally in their favor, against Padilla, and to resolve all ambiguities in their favor.

{28} We are not persuaded. The arguments are supported by nothing but broad legal statements from cases that are not analogous or otherwise applicable to the facts of this case. We do not agree that the contract language is ambiguous, and we are not made aware by the Ulibarris of any circumstance or testimony that required the district court to rule on ambiguity or to interpret the contract based on ambiguous language. *See Mark V, Inc. v. Mellekas*, 114

N.M. 778, 781, 845 P.2d 1232, 1235 (1993) (stating that a contract is ambiguous only if it "is reasonably and fairly susceptible of different constructions," and that the court can consider evidence showing ambiguity).

{29} The issue regarding the fee agreement ultimately turned into how the contingency fee obligation was to be satisfied under circumstances in which the properties being transferred to the Ulibarris had not been surveyed and had no per-acre valuation on which the court could rely for a dollar lien amount. Nothing in the record indicates that Padilla refused to accept cash or a particular partitioned property to be liquidated. Nor does anything in the record indicate that the Ulibarris offered cash in lieu of an interest in property. Furthermore, the action pursued by Padilla on behalf of the Ulibarris was one for property, and there is no evidence indicating that the Ulibarris were at any time confused as to how they would satisfy the contingency fee obligation. We see no contract construction or equity principles that required the district court to deny Padilla a charging lien against the recovered property when his fee would not otherwise be satisfied. *See Prichard v. Fulmer,* 22 N.M. 134, 147–48, 159 P. 39, 43–44 (1916) (explaining that a charging lien attaches to the fruits of an attorney's labor, whether those fruits are real property, assets, or money recovered on behalf of the attorney's clients); *Sowder,* 1999–NMCA–058, ¶¶ 11, 14, 127 N.M. 114, 977 P.2d 1034 (explaining that an attorney's lien must be asserted prior to "the payment of money or the transfer of property"); *Thompson v. Montgomery & Andrews, P.A.,* 112 N.M. 463, 466, 816 P.2d 532, 535 (Ct.App.1991) (explaining that a lien may be asserted against any "money or property" due to the attorney's clients, as long as it is asserted prior to distribution).

{30} We therefore see no reason, and the Ulibarris show us none, why the district court could not reasonably fashion enforcement of the charging lien as it did in this case in order to assure that the Ulibarris did not reap a benefit from Padilla's work in this litigation and leave Padilla undercut in his fee recovery. *See Cherpelis,* 1998–NMCA–079, ¶¶ 8–9, 125 N.M. 248, 959 P.2d 973 (dis-cussing the theory of allowing a charging lien to assure that successful litigants do not evade payment of fees, and also discussing the court's power in equity to "fashion a proper remedy to accomplish a just and proper result" and to "devis[e] its remedy and shap[e] it so as to fit the changing circumstances of every case and the complex relations of all the parties" (internal quotation marks and citations omitted)).

**C. The Ulibarris Claim that the Fee Agreement and Padilla's Conduct in Attempting to Enforce the Fee Agreement Make the Fee Agreement Unenforceable Because Padilla Acquired a Proprietary Interest in the Subject Matter of the Litigation**

■ {31} The Ulibarris rely on Rule 16–108(J) NMRA, which prohibits lawyers from "acquir[ing] a proprietary interest in the cause of action or subject matter of litigation." They acknowledge that the rule does not prohibit acquisition of a lien granted by law to secure fees and expenses or a contract for a reasonable contingent fee in a civil case. The Ulibarris nevertheless assert that Padilla took an interest in the subject matter by making himself a party to the mediation settlement agreement, since he combined his role as an attorney acting in the best interest of his clients with his personal action to protect payment of his fees. The Ulibarris argue that Padilla co-mingled a property interest he sought and obtained with the property interests of the Ulibarris while inexorably caught in a conflict of interest. The Ulibarris fault the court for not scrutinizing the fee agreement and the settlement agreement in that regard.

{32} We reject the Ulibarris' contentions. Rule 16–108(J) states that a "contract with a client for a reasonable contingent fee in a civil case[,]" as well as one "acquir[ing] a lien granted by law to secure the lawyer's fee or expenses" are recognized exceptions to the general rule that "[a] lawyer shall not acquire a proprietary interest." In this case, the court enforced the charging lien based on the original fee agreement. The Ulibarris set out no evidence indicating that the negotiation of the fee agreement was other than an arms-length transaction, and they provide

neither evidence nor authority supporting their argument that Padilla breached a special fiduciary duty. To the contrary, it was at the Ulibarris' insistence that the parties enter into the hybrid fee agreement with Padilla's normal hourly rate and contingency fee percentage each cut in half. There exists no evidence that Padilla acted dishonestly, deceptively, or in bad faith in negotiating the fee agreement.

{33} The important question has not so much to do with Rule 16–108(J) but whether, as a policy matter, where there is a contingency fee contract at the outset of litigation seeking recovery of real property, an attorney should be permitted ultimately to obtain an interest in the real property recovered instead of a money judgment based on the fair market value of that property. We do not address that issue because the Ulibarris focused on eliminating any right to a contingent fee recovery by Padilla, and failed to establish either (1) that the district court abused its discretion by not initiating or requiring an alternative means of satisfying Padilla's fee, or (2) that the ultimate result in this case was reached because of undue influence, misrepresentation, dishonesty, bad faith, or overreaching by Padilla. We cannot state that, as a matter of policy or law, that the circumstances forbade satisfaction of the fee agreement by an award of an interest in the property. Further, the Ulibarris' argument that Padilla unlawfully or wrongfully made himself a party to the settlement agreement is unavailing for at least two reasons. First, the court enforced the fee agreement, not the fee-related provision in the settlement agreement. Second, the Ulibarris present no authority indicating that, in a settlement agreement between the clients and the opposing party, provision cannot be made for a distribution or allocation of funds to be paid in the settlement that includes the payment of attorney fees.

## II. Second Point: Schehl's Portion of the Settlement Agreement Was Not Within Padilla's Reach, the Court's Order Reflects a Ruling Not Made by the Court, and Such Ruling is Not Based on Substantial Evidence in the Record

■ {34} The Ulibarris contend that there existed no contract between Padilla and Schehl, and that if Padilla is entitled to any fee from Schehl or from her property he must prove that independently of any contract. They also argue that Padilla did not prove an independent basis for recovery from Schehl and, therefore, any amount Padilla might be entitled to from Schehl must be determined on remand.

{35} It is not disputed that, until Padilla withdrew as her attorney, he acted in Schehl's behalf in the litigation with her permission. After Padilla withdrew, Schehl remained nominally pro se and relied on her brothers to carry through with the litigation. Schehl agreed to the provision that was included in the settlement agreement giving her an undivided quarter interest in the property "after allocation and payment of the balance of all expenses and attorney fees (16.67% of the acreage)." The district court, at both the hearing on the settlement agreement and the hearing on the charging lien, indicated its view that Schehl was not entitled to the benefits of Padilla's work without sharing in the attorney fees.

{36} Schehl does not point out to us where, after remand by this Court to the district court to address the settlement agreement dispute in regard to allocation and fees, she raised an objection to any aspect of the settlement agreement. Lee agreed that the settlement agreement should remain effective. Nothing indicates that Schehl contended otherwise. Schehl and her brothers accepted those aspects of the settlement agreement that benefited them. There exists no evidence that Schehl did not understand the provision of the settlement agreement that she agreed to in regard to sharing in fees.

■ {37} We think that Schehl's conduct is sufficient to bind her to the fee arrangement in the settlement agreement. However, even were this on shaky ground, it seems obvious that from the outset the fee was to attach to the property or to its fair market value and that the property would therefore constitute, in effect, a common fund to which the fee attached. Under the circumstances,

we do not see why the common fund doctrine should not apply to satisfy Padilla's right to payment of his fee. *See N.M. Right to Choose/NARAL v. Johnson,* 1999–NMSC–028, ¶ 19, 127 N.M. 654, 986 P.2d 450 (indicating that the common fund doctrine is an equitable exception to the American rule); *In re N.M. Indirect Purchasers Microsoft Corp.,* 2007–NMCA–007, ¶ 18, 140 N.M. 879, 149 P.3d 976 (stating that under the common fund doctrine "a litigant or a lawyer who recovers, preserves, or increases the value of a common fund, thereby benefitting other persons, may be reimbursed for reasonable fees and expenses from the fund as a whole," before it is distributed to the prevailing parties, and an attorney is entitled to be compensated in proportion to the benefit obtained for each person who shares in the recovery).

{38} We view the district court's enforcement of the charging lien against Schehl's interest as part of the court's equitable powers. We see no basis on which to hold that the district court abused its discretion in holding all siblings responsible for Padilla's attorney fees.

### III. Third Point: The Settlement Agreement Does Not Amend or Supercede the Original Fee Agreement

{39} The Ulibarris anticipate in their brief in chief that Padilla would argue that the settlement agreement controls and is the basis on which Padilla seeks to recover his fees. They argue that this position is unreasonable. They quote Padilla as stating in the May 5, 2005, hearing that his lien was "based on the original fee agreement, nothing's been changed."

{40} The Ulibarris' contention is flawed. The Ulibarris do not indicate what Padilla would argue that would create an issue for us to address on appeal. Further, they do not specifically point out where, in Padilla's answer brief, their unstated issue was made an issue by Padilla. Finally, the Ulibarris do not explain how they raised this issue in the district court and invoked a ruling of the district court.

{41} We note that, in his answer brief, Padilla argues that the Ulibarris had no concern about the form of payment, and also that, although the Ulibarris claim on appeal that a cash payment would be acceptable, they never proposed to the district court a practical means by which to achieve that result, but actually opposed liquidation of the property. Padilla also argues that the Ulibarris' lack of concern about the form of payment is confirmed by their agreement in the settlement agreement to the language "16.67% of the acreage" which, according to Padilla, clarified what Padilla would receive. However, throughout his answer brief, Padilla focuses on the original fee agreement to support the court's order approving his attorney fees. He does not hinge his position on the effect of settlement agreement phraseology.

{42} We see no basis on which to grant the Ulibarris any relief on appeal based on the contention they assert on this point.

### IV. Fourth Point: It was Unlawful for Padilla to Bill $175 Per Hour for His Services After Appeal in Addition to Applying His One–Sixth Contingency Fee

{43} The Ulibarris challenge payment to Padilla of fees charged at $175 per hour for his work on the estate's appeal that ended with the settlement agreement, on the ground that there was no consideration for the increase from the $75 amount in the fee agreement. We reject that challenge. The $26,791.54 to which the Ulibarris agreed at the May 5, 2005, hearing included the $175 per hour fee for the sixteen hours Padilla worked on the estate's appeal. The court approved the payment of hourly fees out of the $40,000 recovery and directed Padilla and Lee to go to the bank and divide the $40,000 as agreed. The payment division was carried out. After payment, Padilla no longer sought payment of hourly fees. The Ulibarris waived any attack on the $175 fee by agreeing to payment and permitting the payment without any protest or objection. In the proceedings later in regard to the charging lien, only the contingency fee was at issue. The issue of the propriety or validity of the $175 fee is, therefore, not properly before this Court.

690

CONCLUSION

{44} We affirm the district court's order approving attorney fees and the subsequent automatic denial of the Ulibarris' motion to reconsider.

{45} IT IS SO ORDERED.

WE CONCUR: IRA ROBINSON and MICHAEL E. VIGIL, Judges.