*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ELIZABETH A. ELDRIDGE,

        Plaintiff-Appellee/Cross-Appellee,

UNPUBLISHED
April 11, 2024

v

WILLIAM R. ELDRIDGE,

        Defendant-Appellee/Cross-Appellee,

No. 365601
Wayne Circuit Court
LC No. 95-509557-DM

and

SZYMANSKI'S LAW PLC,

        Appellant/Cross-Appellee,

and

BRUCE R. NICHOLS,

        Claimant-Appellee/Cross-Appellant,

and

DYKEMA GOSSETT PLLC, WILLIAMS
BROOKS, INDEPENDENT BANK,

        Claimants-Appellees/Cross-Appellees,

and

ANTHONY S. GUERRIERO,

        Other Party-Appellee/Cross-Appellee.

-1-

Before: Garrett, P.J., and Riordan and Letica, JJ.

Per Curiam.

Appellant Szymanski's Law, PLC, appeals as of right the trial court's order denying its motion for an attorney charging lien against assets possessed by the receiver in this case. Cross-Appellant Bruce R. Nichols appeals as of right the same order denying his motion for an attorney charging lien against the same assets. On appeal, Szymanski and Nichols argue that the trial court erred by denying their respective motions for a charging lien, as the three reasons provided by the court were invalid. We disagree and affirm.[1]

## I. FACTS

On April 4, 1995, plaintiff Elizabeth Eldridge filed a complaint for divorce against defendant William Eldridge. The judgment of divorce was ultimately entered on December 13, 1996. Unfortunately, William was uncooperative with court orders directing him to disburse assets to Elizabeth, and a receiver was appointed in 2000 to maintain control of some or all of those assets on her behalf.

During the litigation, Szymanski was substituted as counsel for Elizabeth on January 8, 2007. Nichols was retained by Elizabeth in 2009. On March 8, 2018, Szymanski and Nichols filed a "Stipulation for Substitution of Attorneys" stating that "[t]he undersigned hereby stipulate and agree that Margaret M. Tobin, be substituted in the place of Bruce Nichols, and Michael A. Szymanski, as attorney for the Plaintiff, Elizabeth A. Eldridge."

On May 15, 2018, Nichols filed a motion for a charging lien, requesting that "the Court . . . authorize and order an Attorney's Charging Lien in the amount of **$16,648.74** and authorize the Receiver to issue a check or checks in such amount payable solely to Bruce R. Nichols . . . ." (Emphasis in original.) This amount represented unpaid "legal services rendered."[2] The same

---

[1] The claim of appeal was filed beyond the 21-day period for an appeal by right. See MCR 7.204(A)(1). However, MCR 7.204(A)(3) provides that "[w]hen service of the judgment or order on appellant was delayed beyond the time stated in MCR 2.602, the claim of appeal must be accompanied by an affidavit setting forth facts showing that the service was beyond the time stated in MCR 2.602." MCR 7.204(A)(3) further provides that "[i]f the Court of Appeals finds that service of the judgment or order was delayed beyond the time stated in MCR 2.602 and the claim of appeal was filed within 14 days after service of the judgment or order, the claim of appeal will be deemed timely." In this case, Szymanski filed an affidavit indicating that neither he nor Nichols were informed of or served with the relevant lower-court order until March 24, 2023, and that he promptly filed the instant claim of appeal within 14 days. The plaintiff does not dispute this assertion and concedes that Szymanski has an appeal as of right.

[2] In subsequent documents, Nichols referred to $8,236 as the requested amount of the charging lien. Moreover, in his brief on appeal, Nichols asserts that his motion requested a charging lien in

-2-

day, Szymanski also filed a motion for a charging lien in the amount of $49,765.01. In his motion, Szymanski represented as follows:

> 6. In 2015 pursuant to a specific authorization of this Court, the court appointed Receiver issued a check in the amount of $117,945.02 payable jointly to Plaintiff and Petitioner, the then outstanding balance of fees owed to Petitioner.
>
> 7. When the 2015 joint check for $117,945.02 was issued, Petitioner could rightfully have insisted on receiving the full amount, but at Plaintiff's request, Petitioner agreed to an accommodation and accepted a partial payment of $72,500.01 in reliance on Plaintiff's promise that the remaining balance of $45,445.01 would be paid to Petitioner out of any future payments to Plaintiff in the case at the rate of 50% of any such payments until that balance was paid in full. The agreement and that balance is acknowledged as an account stated between Petitioner and Plaintiff in a written agreement, prepared not by Petitioner but by another attorney then representing Plaintiff, and signed by Plaintiff . . . .

Szymanski explained that he was entitled to a charging lien for this unpaid $45,445.01, as well as an additional $4,320 for legal services rendered after the 2015 agreement.

On August 16, 2018, the trial court entered an order stating that the motions would be considered at a hearing on October 5, 2018. That hearing was rescheduled for November 30, 2018, rescheduled again for June 14, 2019, and then rescheduled for some point after August 14, 2019. On October 4, 2019, the trial court entered an order stating, "The Court will issue a written opinion."

On August 17, 2020, then-trial court Judge Charles S. Hegarty entered a disqualification order on a SCAO-approved form stating, "I believe, based on objective and reasonable perceptions, my continued assignment would create an appearance of impropriety."

Nothing happened in the case until January 25, 2022, when Independent Bank changed attorneys. On September 15, 2022, Nichols and Szymanski filed a motion arguing that their respective charging liens were superior to the lien claimed by Independent Bank. The motion requested that the trial court order that "the respective charging liens be paid prior to any further disbursements other than for Receiver's fees and costs . . . ."

On September 26, 2022, the now-trial court Judge Mary Beth Kelly held a hearing on the several matters before her. The trial court began the hearing by summarizing the history of the case:

> Okay. Before we address several of the motions at hand, I would like to address the procedural history of the case.

---

the amount of "$8236," and he repeatedly requests that this Court uphold his charging lien in that amount.

Judge Hagerty [sic] entered an order or, at least, on the record, recused himself on August 17th, 2020. At that point in time, this matter should have been reassigned by the presiding judge, to another judge. It was not. Instead, on January 1st, 2021, after I was elected in November, to this court, I assumed the docket of Judge Hagerty [sic]. A reassignment order was entered, reassigning all of Judge Hagerty's [sic] cases to myself, but it was not a specific reassignment of this particular case.

\* \* \*

Now, I'm happy to hear this case but, again, the parties were entitled to an Order of Reassignment, once Judge Hagerty [sic] chose to disqualify himself. So I need the parties and the attorneys to consent to me hearing this case, otherwise I will have it reassigned.

The attorneys consented to Judge Kelly presiding over the case.

The parties then discussed how the receiver should disburse the $245,705.99 in his possession, whether Independent Bank had a valid lien against those assets, and other miscellaneous matters not relevant for this appeal. The trial court indicated that it would issue a ruling at a later date resolving the outstanding issues in the case, including the pending motions for charging liens.

On October 17, 2022, the trial court stated its opinion on the record. With regard to the motions for charging liens, the trial court ruled:

*The Court*: . . . As this Court sets [sic] in equity, again, given the substantial amounts owed to the Plaintiff, the Court will not allow distribution to the prior counsel and their charging liens are dismissed against the real estate – against the receivership's estate. The Receiver will be awarded $20,173 in costs and fees and the remainder of the receivership estate . . . is to be released to the Plaintiff and the receivership will be terminated upon that release.

\* \* \*

*Mr. Szymanski*: Your Honor, what is the basis for denying the attorney charging liens?

*The Court*: Again, I indicated this Court sits in equity and given the – given the substantial funds that have not been paid to Ms. Eldridge. It is in my equitable judgment, given the amount of time that has passed and given the fees that you and Mr. Nichols have already realized that it would not be equitable. . . .

Finally, the trial court denied Szymanski's request for a stay pending appeal.

On January 25, 2023, the trial court entered an order stating, in relevant part:

-4-

IT IS ORDERED that the Court has determined that given the substantial amounts owed to Plaintiff, and given the amount of time that has passed and the fees already paid to Attorneys Szymanski and Nichols, their charging liens are dismissed.

\* \* \*

IT IS ORDERED that . . . the balance of funds being held by the Receiver shall be payable to the plaintiff, Elizabeth Eldridge, following 21 days from entry of order.

\* \* \*

IT IS ORDERED that upon the disbursement of funds as provided herein, and upon the resolution of Defendant's obligation to deposit the life insurance proceeds, as provided herein, this receivership shall be dismissed and the Receiver shall be discharged.

IT IS ORDERED that the parties request for a stay pending appeal is denied.[3]

Thereafter, Szymanski and Nichols each filed a motion for reconsideration, which the trial court denied.

Szymanski and Nichols now appeal.[4]

## II. STANDARD OF REVIEW

"The decision whether to impose an attorney's lien lies within the trial court's discretion, and such decisions are reviewed for abuse of discretion." *Reynolds v Polen*, 222 Mich App 20, 24; 564 NW2d 467 (1997) (internal citation omitted). "An abuse of discretion occurs when the

---

[3] A July 1, 2022 motion filed by the receiver indicates that the receivership possessed about $250,000 at that time. In other words, the trial court ordered the receivership to pay Elizabeth about $250,000, plus a relatively small amount of life-insurance proceeds.

[4] We note the possibility that this appeal may be moot. As explained, the trial court denied Szymanski's motion to stay its order pending appeal and, instead, ordered the receiver to pay the remainder of assets in his possession to Elizabeth. Assuming that the receiver has done so, he currently possesses no assets to which a charging lien may be attached. "Without a judgment or fund, there can be no attorney charging lien, as there is nothing upon which to attach this lien and any argument over the legal aspects of that lien become moot." *Slater v Ohio Dep't of Rehabilitation and Correction*, 111 NE3d 492, 501 (Ohio Ct App, 2018) (cleaned up). However, because Szymanski and Nichols perhaps could be awarded charging liens against any assets currently possessed by Elizabeth, we will address the merits of this appeal.

trial court chooses an outcome falling outside the range of principled outcomes." *Elher v Misra*, 499 Mich 11, 21; 878 NW2d790 (2016) (quotation marks and citation omitted).

"Whether a lien is authorized in a particular case is a question of law. We review questions of law de novo." *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 281; 761 NW2d 761 (2008).

## III. DISCUSSION

Szymanski and Nichols argue that the three reasons identified by the trial court for "dismiss[ing]" their requested charging liens were invalid, and they ask this Court to remand to that court to both recognize and enforce those liens. For the reasons explained below, while the trial court's use of the word "dismissed" may have been imprecise, the trial court reasonably may be understood as declining to enforce the charging liens. We conclude that the trial court did not abuse its discretion in that regard.

"There are two types of attorney's liens. A general, retaining, or possessory lien grants the attorney the right to retain possession of property of the client, including money and documents, until the fee for services is paid." *Souden v Souden*, 303 Mich App 406, 411; 844 NW2d 151 (2013). "A special or charging lien is an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit." *Id*. (quotation marks and citation omitted). "The charging lien creates a lien on a judgment, settlement, or other money recovered as a result of the attorney's services." *Id*. (quotation marks and citation omitted). "The lien exists as part of the court's inherent power to oversee the relationship of attorneys, as officers of the court, with their client. It does provide a means of securing the legitimate interest of the attorney in payment for his services and expenses on behalf of the client, but it is subject to the control of the court for the protection of the client and third parties as well." *Kysor Indus Corp v DM Liquidating Co*, 11 Mich App 438, 445; 161 NW2d 452 (1968) (quotation marks and citations omitted). "Attorney charging liens are not recognized by statute but exist in the common law." *Souden*, 303 Mich App at 411.

Charging liens "automatically attach to funds or a money judgment recovered through the attorney's services." *George v Sandor M Gelman, PC*, 201 Mich App 474, 477; 506 NW2d 583 (1993). However, whether to enforce a charging lien is a separate question. See *Souden*, 303 Mich App at 412 ("The ability to enforce an attorney's charging lien is ancillary to a trial court's exercise of jurisdiction over the cases before it.").[5] The trial court may decide whether and how to enforce a charging lien. See *Kysor*, 11 Mich App at 445 (explaining that a charging lien "is subject to the control of the court for the protection of the client and third parties as well") (quotation marks and citations omitted). "[W]here considerations of protecting an attorney do not necessitate imposition of a lien, the court will not impose one." 7A CJS Attorney & Client § 523. "On the other hand, a lien on the proceeds of litigation should be declared in favor of an attorney in a cause where equitable considerations require that such lien be recognized." *Id*.

---

[5] Other courts might refer to the process of "perfecting" the charging lien. See, e.g., *Leventhal v Black & LoBello*, 129 Nev 472; 305 P3d 907 (2013).

With regard to divorce proceedings in particular, "[t]his Court has recognized a divorce court's power to enforce charging liens secured by a judgment of divorce." *Souden*, 303 Mich App at 411. In contrast, the Connecticut Supreme Court has held that "attorneys are [not] entitled by operation of law to equitable charging liens against marital assets for fees and expenses incurred in obtaining judgments for their clients in marital dissolution actions." *Olszewski v Jordan*, 315 Conn 618, 620; 109 A3d 910 (2015). The Florida Court of Appeals allows for charging liens in divorce actions, but "an attorney's charging lien should not be enforced against an award of alimony if to do so would deprive a former spouse of daily sustenance or the minimal necessities of life." *Duhamel v Fluke*, 295 So3d 880, 882 (Fla Ct App, 2020) (cleaned up). The New Mexico Court of Appeals has held that a trial court possesses "equitable authority in a domestic relations suit to void an attorney's charging lien recorded on the parties' residence and, once that property sells, to allocate the proceeds in a manner that pays court-appointed experts before satisfying attorney charging liens on the proceeds." *Philipbar v Philipbar*, 127 NM 341, 343; 980 P2d 1075 (NM Ct App, 1999).

In short, a charging lien is equitable in nature. The existence or "attach[ment]" of a charging lien is automatic, but whether such a lien may be perfected or "enforce[d]" depends on the facts of the case. Moreover, other states have recognized that a trial court may either limit or largely prohibit charging liens in divorce cases. This makes sense, as the charging lien itself is equitable in nature, as are divorce proceedings in general. See *Draggoo v Draggoo*, 223 Mich App 415, 428; 566 NW2d 642 (1997).

In the matter before us, as stated earlier, the trial court denied the respective motions for a charging lien with the following reasoning:

> IT IS ORDERED that the Court has determined that given the substantial amounts owed to Plaintiff, and given the amount of time that has passed and the fees already paid to Attorneys Szymanski and Nichols, their charging liens are dismissed.

Bearing in mind the overall principle that "a court of equity molds its relief according to the character of the case," *Wiand v Wiand*, 178 Mich App 137, 144; 443 NW2d 464 (1989) (quotation marks and citation omitted), we conclude that the trial court did not abuse its discretion by declining to enforce the requested charging liens.[6] In a September 20, 2022 brief filed in the trial court, Elizabeth represented that the divorce judgment obligated William to pay $9 million to her, as well as 50% of the support costs for the parties' disabled son; that William failed to pay

---

[6] Two points are briefly noted. First, as explained, this Court has stated that "whether to impose an attorney's lien" is reviewed for an abuse of discretion, while "[w]hether a lien is authorized" is reviewed de novo. We therefore conclude that whether to enforce a charging lien is within the trial court's discretion, and whether a lien exists in the first instance is reviewed de novo.

Second, the trial court stated that the charging liens "are dismissed." This statement indicates that the trial court recognized that the charging liens existed but declined to enforce them.

These two points, taken together, indicate that the trial court's decision here is reviewed for an abuse of discretion, not de novo.

some or all of that money to her, which resulted in substantial litigation in the trial court as well as the probate court; that as of January 2019, Elizabeth was owed $493,116.43 "plus hundreds of thousands of dollars pursuant to the probate court orders"; that Elizabeth is "without employment, advanced in years, has health concerns, and yet, until recently, remained the sole financial and care provider for the parties' adult special needs child"; and that "[t]o date, the Receivership has paid $324,460.00 to, and for the benefit of, [Elizabeth]; of the total, $100,699.49 (over 30%) was paid to Attorneys Szymanski and Nichols." These factual representations are not disputed by Szymanski or Nichols.

While it is true Elizabeth has received a substantial amount of money following the 1996 divorce judgment, this fact would weigh in favor of enforcing the charging liens, as it may be inferred that doing so would not leave her destitute. However, as the trial court observed, Elizabeth was owed hundreds of thousands of dollars that she likely would never recover. In addition, the post-divorce proceedings had been ongoing for over 25 years, and when the trial court decided the case, the parties were arguing about services provided over a decade prior. The passage of time arguably rendered it difficult for the trial court to even provide a principled decision at this stage of the case. Further, while not the complete amounts they seek, Szymanski was paid about $100,000 in attorney fees, and Nichols was paid about $10,000 in attorney fees. Thus, as the trial court noted, declining to enforce the charging liens would not result in the attorneys being unpaid for their legal services.

Given these facts, as well as the fact that this is a divorce case—which other state courts have recognized as perhaps weighing against a charging lien—we conclude that the trial court did not abuse its discretion by declining to enforce the charging liens.

## IV. CONCLUSION

The trial court did not abuse its discretion by declining to enforce Szymanski's and Nichols's respective charging liens. We affirm.

/s/ Kristina Robinson Garrett
/s/ Michael J. Riordan
/s/ Anica Letica